UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
)
v. ) Criminal No: 11-CR-10201-NMG
)
)
ROBERT A. GEORGE )
)

**Motion to Dismiss Count One and Incorporated Memorandum of Law**

Now comes the Defendant, Robert A. George, by and through undersigned counsel, pursuant to the Fifth and Sixth Amendments to the United States Constitution and Rule 12(b)(3) of the Federal Rules of Criminal Procedure, and hereby moves the Court for an order dismissing Count I, as the government has improperly charged 18 U.S.C. §§1956(a)(1)(B)(i) and 1957 as objects of the conspiracy, when the government should have charged a conspiracy to violate 18 U.S.C. §1957(a)(3), known as the "money laundering sting statute," which covers situations that exist in this case—*i.e.*, when the government provides the "proceeds" at issue as part of a sting operation. Indeed, in Counts II and III, the government charges that Mr. George aided and abetted transactions that violated the "sting" portion of the statute. *See* Indictment at Counts II and III.

**REQUEST FOR ORAL ARGUMENT**

The defendant respectfully requests oral argument on the within motion.

**LOCAL RULE 7.1 CERTIFICATION**

The defendant conferred with the United States in an unsuccessful attempt to narrow or resolve these issues.

**MEMORANDUM OF LAW**

I. *Background*.

In March 2009, Ronald Dardinski, a cooperating government witness, began tape recording conversations with Mr. George, ostensibly because Mr. George offered to launder proceeds from Dardinski's unlawful activities. A detailed description of the facts of this case are contained in the defendant's motion to dismiss, entitled "Defendant's Motion to Dismiss and Incorporated Memorandum of Law," filed on this date, and the defendant respectfully refers the Court to those facts, and incorporates same, rather than repeat them herein.

There are two transactions relevant for purposes of the instant motion. On December 16, 2009 and April 15, 2010, Dardinski provided $100,000.00 cash to Mr. George's alleged co-conspirator, Michael Hansen, in return for a check in the amount of $80,000.00 on each occasion. The funds provided to Hansen were provided by the government, as part of its undercover investigation, and were not "in fact" proceeds of any specified unlawful activity. To wit, Counts II and III charge that Mr. George aided and abetted transactions involving property "represented by a person at the direction of a federal officer . . . to be the proceeds of specified unlawful activity . . .." Indictment at Counts II and III.

II. *Argument*.

18 U.S.C. §1956(a)(3) is known as the "money laundering sting" statute, *see United States v. Castellini*, 392 F.3d 35, 43 (1st Cir.2004), and was added to the money laundering statute by congressional amendment in 1988, *see United States v. Stanton*, 1992 WL 73408, *2 (S.D.N.Y.1992) (unpublished decision) ("In 1988 Congress added

subsection (a)(3) to the money laundering statute. Subsection (a)(3) deals specifically with 'sting' operations such as the one alleged at bar"). It provides, in pertinent part, that whoever, with the intent to conceal or disguise the nature, location, source, ownership or control of property "*believed to be the proceeds* of specified unlawful activity . . . conducts or attempts to conduct a financial transaction involving property *represented to be* the proceeds of specified unlawful activity . . ." shall be punished. 18 U.S.C. §1956(a)(3) (emphasis added). In contrast, 18 U.S.C. §1956(a)(1)(B)(i), which is charged as the object of Count I in this case (along with 18 U.S.C. §1957), provides that whoever, "*knowing* that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which *in fact* involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . ." shall be punished (emphasis added). As the Eleventh Circuit observed in *United States v. Magluta*, 418 F.3d 1166, 1175-76 (11th Cir.2005), these two provisions cover different situations and serve different purposes:

> Sections 1956(a)(1) and 1956(a)(3) cover different situations. The (a)(1) subdivision covers situations where the proceeds are actually from a specified unlawful activity. 18 U.S.C. §1956(a)(1). The (a)(3) subdivision covers situations where the government, or some person at the direction of the government, represents that the proceeds are from a specified unlawful activity though in reality they are not. *Id*. §1956(a)(3). The two provisions serve different purposes.

*See also* U.S. Attorney's Manual, Title 9, Money Laundering Overview ("Section 1956(a) defines three types of criminal conduct: domestic money laundering transactions (§1956(a)(1)); international money laundering transactions (1956(a)(2)); and undercover 'sting' money laundering transactions (§1956(a)(3))"). Indeed, the U.S. Attorney's

Manual provides that section §1956(a)(3) "relates to undercover operations where the financial transaction involves property represented to be the proceeds of specified unlawful activity. The proceeds in §1956(a)(3) cases are not actually derived from real crime; they are undercover funds supplied by the Government." U.S. Attorney's Manual, Title 9, Money Laundering Overview at 2.

In *United States v. Berrio*, 77 F.3d 206, 208-209 (7th Cir.1996), the court also addressed the reasons behind the amendment of the money laundering statute to include a so-called "sting" section:

> As originally enacted, the money laundering statute required that a defendant must have "known" the laundered money was the product of unlawful activity. This knowledge requirement became the source of some disagreement when applied to government sting operations. Some courts held that it was impossible to "know" that funds were illegally derived if they were not in fact unlawful, but rather government-supplied sting funds. Other courts rejected this impossibility argument and held that what mattered for purposes of the knowledge requirement was the defendant's subjective mental state; a defendant's (mistaken) belief that the sting money was unlawfully procured could be equated with knowledge. The statute was amended to eliminate the impossibility defense, and subsection (a)(3) of §1956 was added to include sting operations within the scope of the statute. Subsection (a)(3) criminalizes the laundering of money represented to be the proceeds of unlawful activity by law enforcement officers or those acting under their direction.

Given that none of the proceeds involved in the relevant transactions in this case were "in fact" proceeds of specified unlawful activity, but instead were "sting" proceeds the government provided to Dardinski, the government appropriately charged Mr. George with aiding and abetting violations of 18 U.S.C. §1956(a)(3) in Counts II and III, but improperly charged 18 U.S.C. §1956(a)(1)(B)(i) and §1957 as objects of the conspiracy in Count I. Like section 1956(a)(1), section 1957 applies to factual situations where the funds at issue in fact derive from specified unlawful activity. 18 U.S.C. §1957 (whoever knowingly engages in a monetary transaction "in criminal derived property of a value

greater than $10,000 and is derived from specified unlawful activity . . ." shall be punished).

The government should not be permitted to charge §1956(a)(1)(B)(i) or §1957 as objects of a conspiracy in the context of a sting operation, at least not after Congress amended the statute to specifically provide a "sting" subsection. To do so, the Court needs to recast language contained in §1956(a)(1)(B)(i) and/or §1957. For example, §(a)(1)(B)(i) provides that whoever, "*knowing* that the property involved in a financial transaction represents the proceeds of some form of unlawful activity ….. (emphasis added)." In a sting conspiracy case, the Court would have to read "knowing" to mean "believing"—*i.e.*, Mr. George agreed with Hansen to launder funds belonging to Dardinski "believing" the property represented proceeds of some form of unlawful activity. The defendant acknowledges that a conspiracy is merely an agreement, understands the government may not need to prove the elements of the object offenses to establish the elements of conspiracy, and likewise understands the difference between factual impossibility and legal impossibility defenses, but it is incongruous at best to charge subdivision (a)(1)(B) (or §1957) as an object of a sting conspiracy. Perhaps it was a necessary reality before Congress amended the money laundering statute, but it is no longer necessary or appropriate, given the passage of subdivision (a)(3).

The defendant has located at least one case dealing with the issue presented herein, *United States v. Adair*, 436 F.3d 520 (5th Cir.2006), wherein the Fifth Circuit rejected the defendant's argument herein. Relying on prior circuit case law, the court held that the government need not prove all of the elements of the object crime in a conspiracy prosecution, and that allowing the government to charge Adair under

§1956(a)(1) did not frustrate Congressional intent in enacting §1956(a)(3). The Court reasoned:

> When Congress added §1956(h), the conspiracy subsection, in 1992, both §1956(a)(1) and §1956(a)(3) were already in place. The broad language in §1956(h) does not preclude the government from charging Adair with conspiracy under §1956(a)(1), even in a government sting operation. Had Congress wished to prevent conspiracy charges under §1956(a)(1) for government sting operations, it could have drafted §1956(h) to preclude such a result.

*Adair*, 436 F.3d at 525-26.

The Fifth Circuit's rationale is not persuasive. Simply because §1956(h) was enacted after §1956(a)(3), does not mean that Congress would have expressed a limitation in §1956(h). Instead, it is equally, if not more, likely that Congress would have believed that the government, in a "sting" context, would thereafter charge violations of §1956(a)(3) as objects of such conspiracies. Moreover, the Fifth Circuit did not accord sufficient weight to the anomaly that is created when the government charges the "in fact" section of §1956 in "sting" cases, as described above. Even if a conspiracy does not require proof of the elements of the substantive offense, it requires proof that the defendant intended to violate the object statute. *United States v. Gomez-Rosario*, 418 F.3d. 90, 105 (1st Cir.2005) (government must prove an agreement existed "to commit the underlying substantive offense, and that the defendant elected to join the agreement, intending that the underlying offense be committed"); *United States v. Piper*, 35 F.3d 611, 615 (1st Cir.1994) (The government must prove that the defendant possessed both "an intent to agree and an intent to effectuate the commission of the substantive offense"), *cert. denied*, 513 U.S. 1158 (1994). It is awkward, if not entirely nonsensical, to say that a defendant intended to effectuate the commission of an offense that requires knowledge that proceeds were from unlawful activity or that the transactions "in fact"

involved the proceeds of specified unlawful activity when, in fact, there were no proceeds from specified or unlawful activity.

WHEREFORE, for all of the foregoing reasons, the defendant respectfully submits that Count I must be dismissed.

Respectfully Submitted,
ROBERT A. GEORGE,
By His Attorneys,

**/s/ Kevin J. Reddington**
Law Offices of Kevin J. Reddington
Mass. Bar. No. 414160
1342 Belmont Street
Suite 203
Brockton, MA 02301
(508) 583-4280
kevinreddington@msn.com

**/s/ Robert M. Goldstein**
Robert M. Goldstein, Esq.
Mass. Bar No. 630584
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated: September 30, 2011

**Certificate of Service**

I, Robert M. Goldstein, hereby certify that on this date, September 30, 2011, a copy of the foregoing document has been served via the Electronic Court Filing system on all registered participants, including Assistant U.S. Attorney Laura Kaplan.

**/s/ Robert M. Goldstein**
Robert M. Goldstein