```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

UNITED STATES OF AMERICA )
                         )    Cr. No. 11-10201(NMG)
        v.               )
                         )
  ROBERT A. GEORGE       )
                         )
        Defendant.       )

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS
INDICTMENT BASED ON OUTRAGEOUS GOVERNMENT MISCONDUCT AND
<u>VINDICTIVE PROSECUTION</u>**

The United States of America, by its attorneys, United States Attorney Carmen M. Ortiz, and Assistant U.S. Attorneys Laura J. Kaplan and James D. Herbert, hereby files this memorandum in opposition to the motion of Robert A. George (the "defendant" or "George") to dismiss the indictment based on outrageous government misconduct and vindictive prosecution. The defendant's request for an evidentiary hearing, an order for discovery, and dismissal of the indictment is completely devoid of merit and should be summarily denied.

**I.   THE STANDARD FOR AN OUTRAGEOUS GOVERNMENT MISCONDUCT CLAIM**

    **A.   The Government Did Not Engage in Outrageous Government Misconduct.**

"The banner of outrageous misconduct is often raised, but seldom saluted." <u>United States v. Santana</u>, 6 F.3d 1,4 (1st Cir. 1993). Indeed, a claim of outrageous government misconduct has never been successful in the First Circuit, <u>See</u> <u>United States v. Luisi</u>, 482 F.3d 43, 59 (1st Cir. 2007), prompting the Court to

comment that "the doctrine is moribund; in practice, courts have rejected its application with almost monotonous regularity." Santana, 6 F.3d at 4.

That is because a claim of outrageous government misconduct is subject to a demanding, if not insurmountable, standard of proof. It requires proof that the government engaged in misconduct that was "so appalling and egregious as to violate due process by 'shocking ... the universal sense of justice.'" Luisi, 482 F.3d at 59 (quoting United States v. Russell, 411 U.S. 423, 432 (1973)). George's claims come nowhere near to meeting this standard. See generally Santana, 6 F.3d at 4-5 (claims of outrageous government misconduct normally confined to cases involving "extreme physical, and possibly psychological, abuse of a defendant," or cases where "law enforcement personnel become so overinvolved in a felonious venture that they can fairly be said to have created the crime or to have coerced the defendant's participation in it.") (internal citations and quotations omitted); United States v. Nunez, 146 F.3d 36, 38 (1st Cir. 1998).

George argues that the government targeted the defendant and manufactured criminal conduct from whole cloth. While the allegation is baseless, much of the defendant's claim really sounds in entrapment, a trial defense which does not provide for the pre-trial remedy of dismissal of the indictment. In United

2

States v. Schaffer, 586 F.3d 414, 426-27 (6th Cir. 2009), cert denied, 130 S.Ct. 1921(2010,) the Court held that it is seldom appropriate to grant a pre-trial motion to dismiss based on an entrapment defense, because the defense focuses on a defendant's state of mind, an evidentiary question.  See United States v. Fadel, 844 F.2d 1425, 1431 (10th Cir. 1988).  The Court in Schaffer denied the defendant's request for an evidentiary hearing, finding that the entrapment defense is so central to the general issues in the case that holding a hearing solely on entrapment would be tantamount to two trials.  Well established precedent makes it clear that the question of entrapment is generally one for the jury, rather than for the court. See, e.g., Mathews v. United States, 485 U.S. 58,63(1988)(citation omitted). In related areas, courts discourage the pre-trial disposition of motions to dismiss that are based on defenses requiring fact finding.

George's allegation that the government initiated criminal activity and created the charged crimes is based on sheer speculation and is belied by the attached affidavit of Special Agent ("SA")Joseph Tamuleviz (See Exhibit A).  The affidavit establishes that contact between the government and the cooperating witness("CW") was initiated by the CW, in or around February 2009, shortly after the CW was released from prison. The CW contacted SA Tamuleviz, whom he had worked with in the

3

past, and reported that he had seen George at the South Shore Plaza, where a discussion ensued about laundering the CW's money.[1] The affidavit further establishes that shortly thereafter, SA Tamuleviz relayed this information to Assistant United States Attorney Laura J. Kaplan and subsequently opened a case on George on March 18, 2009.

To support his argument that he was induced to enter into criminal conduct, the defendant has provided the Court with a binder full of transcripts of consensually recorded conversations. George has chosen to quote portions of these transcripts which, to him, appear exculpatory. However, as the affidavit in support of the criminal complaint, which is attached as Exhibit 10 to defendant's motion, demonstrates, taken together, all of the conversations, over this lengthy investigation, paint a vivid picture of the defendant ready and willing to participate in a scheme to launder money. George's assertion that he was "unwavering and unequivocal" in his

---

[1] It is reasonable to believe that George initiated the subject of laundering the CW's money. As is clear from the defendant's own motion, George was well aware that the CW had defrauded victims out of hundreds of thousands of dollars years before. Moreover, the CW's arrest in 2002 generated a good deal of publicity and specifics of his crimes and the proceeds he earned from those crimes were detailed in the Boston Globe, Boston Herald, Fox 25, and Needham Times. In addition, when the CW was arrested he contacted George for legal help. The CW and George discussed the details of the CW's criminal activity but the CW did not retain George because George wanted too much money as a fee.

rejection of the CW's overtures is simply untrue, as can be seen by the evidence of the numerous telephone calls initiated by George himself (at least 68 of them) to the CW and requests for meetings with the CW - all after George clearly understood that the CW was laundering money with Hanson, the individual introduced to the CW by George. There is no evidence to establish, as George alleges, that the government became investigators of the crime through its CW for an improper purpose or to seek retribution upon the defendant. Moreover, there is no evidence that supports the defendant's argument that the government or the CW targeted the defendant. However, there is strong evidence to prove lack of inducement and there is certainly an adequate evidentiary basis to have charged George. For all of these reasons, an entrapment defense is not appropriate at this juncture and is likely to fail at trial.

**II.   THE STANDARD FOR A VINDICTIVE PROSECUTION CLAIM**

    **A.   The Government Did Not Target the Defendant and Engage in Vindictive Prosecution.**

With respect to George's claim of vindictive prosecution, the federal courts apply a presumption that prosecutors act in good faith and do not prosecute for vindictive or discriminatory reasons. See United States v. Peterson, 233 F.3d 101, 105 (1st Cir.2000) ("We presume that the prosecutor acted in good faith, and did not prosecute in a vindictive manner.") (citing United

States v. Bassford, 812 F.2d 16, 19 (1st Cir.1987).  See also United States v. Armstrong, 517 U.S. 456, 465 (1996) ("in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." (internal quotation marks omitted)); United States v. Serafino, 281 F.3d 327, 331 (1st Cir. 2002) ("the government is presumed to have exercised its prosecutorial responsibilities in good faith"); United States v. Dwyer, 287 F. Supp. 2d 82, 86 (D. Mass. 2003) (a prosecutor's decision to indict is "presumed legitimate") (quoting United States v. Sanders, 211 F. 3d 711, 716 (2d Cir.2000).

This prosecutorial discretion is not without limits.  A prosecutor's use of the charging process may violate due process if it penalizes the exercise of constitutional or statutory rights.  See United States. v. Stokes, 124 F.3d 39, 45 (1st Cir.1997).  To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus. United States v. Goodwin, 457 U.S. 368, 380 n.12 (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion"); United States v. Sanders, 211 F.3d 711, 717 (2d Cir.2000).  See also United States v. Wilson, 262 F.3d 305, 314

6

(4th Cir.2001); United States v. Jenkins, 537 F.3d 1 (1st Cir. 2008).

There are essentially two ways to make a case of prosecutorial vindictiveness. First, the presumption of good faith can be overcome if the defendant shows "actual vindictiveness." See, e.g., Willhauck v. Halpin, 953 F.2d 689, 711 (1st Cir.1991) (suggesting a definition of "actual vindictiveness" as a "vindictive purpose motivating the prosecutors"). The second way in which prosecutorial vindictiveness cases have arisen is where, although there was no showing of "actual vindictiveness," the circumstances suggested such a "realistic likelihood of vindictiveness," that courts have applied a rebuttable presumption of vindictiveness. See Blackledge v. Perry, 417 U.S. 21, 28-29 (1974). See also Stokes, 124 F.3d at 45 ("It is hornbook law that a federal court may dismiss an indictment if the accused produces evidence of actual prosecutorial vindictiveness sufficient to establish a due process violation, or even if he demonstrates a likelihood of vindictiveness sufficient to justify a presumption.").[2]

---

[2] A presumption of vindictiveness can be overcome by objective evidence that the decision to prosecute was properly motivated. See, e.g., United States v. Marrapese, 826 F.2d 145, 149-50 (1st Cir.1987) (prosecutor's explanation of changed circumstances sufficiently objective to overcome presumption); United States v. King, 126 F.3d 394, 399-400 (2d Cir.1997) (presumption of vindictiveness rebutted because government strategized and sought to increase likelihood that at least one of the defendants would be convicted).

A case of actual vindictiveness requires direct evidence that the prosecutor's motive in making a charging decision was to punish a defendant for the exercise of a statutory or constitutional right.  See United States v. Johnson, 221 F.3d 83, 94 (2d Cir.2000) ("A finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'")(quoting United States v. Goodwin, 457 U.S. 368, 380-81 (1982)).  This is an exceedingly rare and difficult standard for a defendant to meet.  See United States v. Gary, 291 F.3d 30, 34 (D.C. Cir.2002) (actual vindictiveness claim is "exceedingly difficult" to make because it requires objective evidence that prosecutor's actions were designed to punish defendant for asserting legal rights).  See also Willhauck, 953 F.2d at 711 (no proof of actual vindictiveness when prosecutors in two counties both brought charges against defendant resulting from car chase); United States v. Brown, 217 F.3d 247, 257 (5th Cir.2000) (defendant failed to show genuine prosecutorial animus when federal authorities investigated him in alleged retaliation for lawsuit filed against local police); United States v. Wade, 266 F.3d 574, 585 (6th Cir. 2001) (no actual vindictiveness because prosecutor increasing charges had no personal stake, and defendant committed additional crime after initial indictment issued); United States v. Spears, 159 F.3d 1081, 1087 (7th Cir.1998) (no proof of actual

vindictiveness on part of federal prosecutor even if state prosecutor threatened to "get" defendant at any cost); United States v. Bucci, 468 F.Supp.2d 251, 256 (D.Mass.2006)(quoting Goodwin, 457 U.S. at 380-381).

With regard to the "realistic likelihood of vindictiveness" cases (warranting a rebuttable presumption), the federal courts have consistently held that, to the extent that the presumption of vindictiveness is even available in the pretrial context, it should only rarely be applied. See, e.g., United v. Stokes, 124 F.3d 39, 45 (1st Cir.1997) ("courts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings"); United States v. Koh, 199 F.3d 632, 639-40 (2d Cir.1999) (presumption of vindictiveness does not arise in pretrial setting or in shift from state to federal jurisdiction); United States v. Wilson, 262 F.3d 305, 315 (4th Cir.2001) (presumption of vindictiveness rarely applied to pre-trial prosecutorial decisions); United States v. Spears, 159 F.3d 1081, 1086 (7th Cir. 1998) (in the pretrial context, defendant "must present objective evidence showing genuine prosecutorial vindictiveness").[3]

---

[3] Generally, the circumstances in which federal courts have applied the presumption of vindictiveness have been when a defendant is re-indicted, particularly when a prosecutor has increased the number or severity of charges for the same offense, after the defendant has appealed his conviction. See, e.g., Blackledge v. Perry, 417 U.S. 21, 28-29 (1974) (Due Process Clause prohibits a prosecutor from bringing a more serious charge

The reasons for this stem from concepts of prosecutorial discretion and separation of powers, and concomitant recognition by the courts that charging decisions are the province of the executive branch, subject to constitutional restraints. See United States v. Armstrong, 517 U.S. 456, 464 (1996)(separation of powers requires broad prosecutorial discretion); Wayte v. United States, 470 U.S. 598, 607-08 (1985) ("Such factors as the strength of the case, the prosecution's general deterrence value, the government's enforcement priorities, and the case's relationship to the government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."); Carranza v. INS, 277 F.3d 65, 72 (1st Cir.2002)(noting a general proscription against judicial review of any aspect of prosecutorial deliberations); United States v. Flemmi, 225 F.3d 78, 86 (1st. Cir.2000).

There is no evidence to demonstrate any animus by the government toward the defendant. Not a shred of evidence supports George's wild theory that the government labors under a serious conflict of interest because the prosecutor involved in the investigation and prosecution of George's case is the same prosecutor who was targeted for murder by the defendant's former client. This is just not the case as can be plainly seen by the

---

against a defendant who has pursued a statutory right of appeal from a conviction on a lesser charge for the same offense).

affidavit of SA Tamuleviz. In fact, the affidavit of SA Tamuleviz resolves many of the issues raised by the defendant's motion and should be dispositive on this issue.

However, the affidavit filed by AUSA Laura J. Kaplan, which is attached hereto as Exhibit B, also establishes that neither of the prosecutors involved in the investigation and prosecution of *this* case, namely AUSAs Laura J. Kaplan and James D. Herbert, were involved in the case involving the defendant's former client who targeted yet another prosecutor to murder. That prosecutor had nothing whatsoever to do with the investigation and prosecution of *this* case, with the exception of having been provided a copy of the prosecution memorandum and indictment for apprisal purposes and having participated in meetings related to the potential conflict of interest.[4] Thus, George's arguments fail to provide sufficient 'objective evidence' of vindictiveness to warrant a dismissal of the indictment.

**B. Defendant's "Other Indicia" of Vindictiveness Fails.**

Finally, in support of his claim of an improper motive and/or vindictiveness on the part of the government, the defendant throws out a hodge podge of other claims. First, the defendant attaches the affidavits of James Dilday, Esq.

---

[4] At the time this investigation was initiated, the prosecutor targeted for murder was not even in the chain of command and had no supervisory authority over Kaplan or Herbert. By March 2011, the prosecutor targeted for murder was in the chain of command of the U.S. Attorney's Office.

11

("Dilday"). Dilday was George's co-counsel in the previous case involving George's prior client convicted of murder for hire. In addition to Dilday's affidavits being replete with misstatements of the facts, his assertions about his client and her desire to speak with the government or not, illuminate a glaring conflict of interest involving Mr. Dilday: his loyalty to his client versus his allegiance to the defendant. Putting that aside, these affidavits have nothing whatsoever to do with the charges pending against the defendant before this Court for the reasons previously outlined.

No evidence of improper motive can be found in the decision to arrest George (as opposed to allowing voluntary surrender). There was nothing unusual or sensational about the defendant's arrest. George's arrest was in complete conformity with Fed. R. Crim P. 4(a). That rule establishes a base line presumption favoring the arrest of a defendant to answer to a criminal case. See Fed. R. Crim P. 4(a) ("If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it."). While Rule 4(a) allows an attorney for the government to request that a judge issue a summons, See Fed. R. Crim. P. 4(a) ("At the request of an attorney for the government, the judge must issue a summons,

instead of a warrant, to a person authorized to serve it"), the Rule provides that the defendant will ordinarily be arrested. See id. In fact, under the very terms of Rule 4(a), if the government takes no action, a warrant for the arrest of the defendant will automatically issue. See id. Importantly, Rule 4(a) does not provide the government or the court with standards for determining whether an arrest warrant should issue.

    Here, the government had legitimate law enforcement objectives that informed its decision to arrest George and its decision rested on a myriad of facts. The government's investigation of George involved a several year *covert* investigation. George was unaware of the investigation, and was not represented by counsel on the matter until after he was arrested. Moreover, this was not an historical case. As outlined in the complaint, George was engaged in ongoing and contemporaneous actions to launder monies from government witnesses. And, George was pursuing this conduct in the days just prior to his arrest.

    As to George's claims relating to the government's having held a press conference, there have been no such government-held press conferences with respect to the instant case. The government did issue a standard press release as it does in every case. The one and only press conference that was held in this

case, was held by the defendant outside of the Courthouse immediately following his initial appearance.

Defendant claims that the government's alleged improper motive is also evidenced by the affidavit of SA Tamuleviz in support of the complaint, which the defendant argues is false and misleading. The defendant cites the case of Franks v. Delaware, 438 U.S. 154 (1978), but interestingly does not actually request a Franks hearing.[5] There is nothing false or misleading about the allegations contained in the affidavit. The defendant calls attention again to the transcripts of conversations between George and the CW and takes issue with SA Tamuleviz' interpretation of these conversations. Again, the defendant will have his chance at trial to make these same arguments, but they have no bearing on the validity of the indictment, and they did indeed establish probable cause to arrest the defendant.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that a defendant becomes entitled to a "Franks hearing" if, and only if, he first makes a "substantial preliminary showing" that a search warrant affidavit included a statement that (a) the affiant knew to be false and (b) was necessary to the finding of probable cause. Id. at 155-56, 170-72. The Supreme Court emphasized that the rule it announced in

---

[5] The reason for this is because dismissal of the indictment is never a remedy for a Franks violation. Suppression is the appropriate remedy and, here, there is no evidence to suppress.

Franks "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." Id. at 167. Specifically, the Court imposed the requirement of a substantial preliminary showing to "prevent the misuse of a veracity hearing for purposes of discovery or obstruction." Id. at 170.

The First Circuit has aptly characterized these requirements as "clear" and "exacting standards" that a defendant must satisfy to obtain a Franks hearing. United States v. Higgins, 995 F.2d 1, 3 & n.3 (1st Cir. 1993). Because these standards are so high, the First Circuit -- more than 20 years after the *Franks* decision -- specifically cited *Franks* and its requirement for a substantial preliminary showing when observing that "evidentiary hearings on motions in criminal cases are the exception, not the rule." United States v. Alicea, 205 F.3d 480, 487 (1st Cir. 2000). George has failed to make a showing, let alone one that is "substantial," that the affidavit was false in any way, much less materially so.

Lastly, George argues that the CW was not properly supervised, as evidenced by (1) the failure of the CW to record all of his conversations with George and (2) the allegation that

15

Hansen was defrauded by the CW out of $10,000.[6]  The defendant's claims are grossly exaggerated and false.[7]  While it is true that not all of the conversations were recorded by the CW, this fact provides no grounds for dismissal of the indictment.  Cf. United States v. Robles, 995 F.2d 234 (9th Cir. 1993)(finding nothing "outrageous" with government's use of informant even if he was "out of control, untrustworthy, [and] conscienceless" as defendant contended.)  In short, while it remains to be seen whether the defendant can make something of these issues relating

---

[6] As far as whether Hansen was defrauded of $10,000, there is quite simply no proof of this allegation. There is no evidence that the CW engaged in illegal activity during the pendency of this investigation.

[7] There were not 800 plus unrecorded calls made by the CW. The toll records reflect duplicate calls because DEA subpoenaed the same time period more than once in order to make sure there were no lapses in the tolls. The toll records reflect that there were a total of 317 calls (recorded and unrecorded) between the CW and George during the time period of February 20, 2009 and March 18, 2011.  Forty-two of those calls were of zero duration; 198 of those calls were of a duration of one minute or less (meaning there was in all likelihood no conversation); forty-seven of those calls were two minutes or less; and thirty calls were longer than two minutes. Of these thirty calls, fifteen were not recorded.  Of those fifteen unrecorded calls, six were incoming calls placed by George to the CW.  Of the total 317 calls between the CW and George, at least 68 were placed by George to the CW.  As for the alleged 140 calls between the CW and Rizzitano, they were not recorded because the CW was not directed to record said calls.  Mr. Rizzitano was at no time a target or subject of this investigation.

to the CW at trial, it is clear in light of the foregoing that it provides no basis for dismissal of the indictment.

### III. DEFENDANT'S DEMAND FOR DISCOVERY AND AN EVIDENTIARY HEARING SHOULD BE DENIED.

In his motion to dismiss, George demands discovery as well. In light of the presumption that a prosecutor has acted in good faith in exercising his discretion to make charging decisions, courts require a defendant seeking discovery first to come forth with "some" objective evidence tending to show the existence of prosecutorial vindictiveness. United States v. Bucci, 582 F.3d 108, 113 (1st Cir. 2009); United States v. Armstrong, 517 U.S. 456 (1996). As already discussed, George has utterly failed to meet his burden.

George also seeks an evidentiary hearing. However, he has failed to make a sufficient showing that material facts are in doubt or dispute. They are not. There is simply no evidence to suggest that the defendant's role in his previous case influenced the government's investigation or prosecution of this matter.

### CONCLUSION

Since the defendant has not provided a scintilla of evidence to demonstrate animus on the part of the government toward the defendant, or that the alleged animus had any probable connection to its prosecutorial decisions in this case, the defendant's

17

motion to dismiss on the ground of vindictive prosecution should be denied. Similarly, since there was nothing shocking or outrageous about the prosecution in this case, the defendant simply has not provided the Court with a reason to become the first court in this Circuit to dismiss an indictment on the ground of outrageous government misconduct. For all of these reasons, the defendant's motion for discovery, an evidentiary hearing, and dismissal of the indictment should be denied.

                                        Respectfully submitted,

                                        CARMEN M. ORTIZ
                                        UNITED STATES ATTORNEY,

                          By:   */s/ Laura J. Kaplan*
                               LAURA J. KAPLAN
                               JAMES D. HERBERT
                               Assistant U.S. Attorneys

November 8, 2011

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                          */s/ Laura J. Kaplan*
                                      Laura J. Kaplan
                                      James D. Herbert
                                      Assistant United States Attorneys

Date: November 8, 2011