```
            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 11-10201-NMG |
| | ) | |
| ROBERT A. GEORGE | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Robert George ("Defendant") is to be sentenced on Wednesday, October 31, 2012 following his conviction after trial on money laundering charges. The government is recommending a sentence at the low end of the guideline sentencing range ("GSR") of 63 months.

**1. Probation's Guideline Calculations are Correct**

The United States Probation Department ("Probation") has filed its PreSentence Report ("PSR") and has calculated the defendant's Total Offense Level ("TOL") at 26. Based upon a TOL of 26, and a criminal history category of I, Probation calculated defendant's GSR as <u>63 to 78 months</u>. For the reasons set forth both in the PSR and below, the Court should accept Probation's calculations and reject defendant's objections.

First, the Court should reject defendant's claim that he should not receive a six-level enhancement under USSG § 2S1.1(b)(1)(A) because he did not know the funds he agreed to launder were drug proceeds. Frankly, that defendant persists in this claim, having had it rejected decisively by the Court in pre

and post-trial pleadings, and by the jury at trial, is puzzling.[1] As the Court is aware, in exhibit N-1, on a March 18, 2009 call, cooperating witness Ronnie Dardinski told the defendant, " ... I got some other money from - I sold some coke to a guy and I gotta hide that money too." Then, on April 6, 2009, in a lengthy call in which the defendant described in detail to Dardinksi how the money laundering transaction with Michael Hansen would go down, defendant said to Dardinski, "and by the way, he's already agreed to do the rest." In uttering those words, squarely in the middle of the conspiracy charged in the Indictment, defendant confirmed that he and Hansen had agreed to launder defendant's purported cocaine money. There is simply no other interpretation of this call. And, the fact that defendant ignored this call in his opening statement, ignored it in his "forensic" cross-examination of Dardinski, ignored it in his closing statement, and completely omits it from the time-line in his sentencing memorandum (see ECF Dkt No. 156 at pp. 3-5) is telling.

The Court should also reject defendant's claim that only one of the two $100,000 money laundering transactions was forseeable to him. The evidence at trial was that defendant was well aware that Dardinski had many hundreds of thousands of dollars to launder. In

---

[1] The government refers the Court to its prior arguments on this issue pre-trial, during the trial, and post trial. The case of Alleyne v. United States, No. 11-9335, cited by the defendant is inapposite as that case relates to statutory mandatory minimums which are not at issue in this case.

addition, as Dardinski testified, he told the defendant about his prior car scam (and the hundreds of thousands of dollars he had defrauded from his victims) when discussing his representation with the defendant.  Moreover, defendant was certainly aware of the large sum of money Dardinski had earned from his car scam both by virtue of his prior representation of him and the public attention the matter received.

Additionally, the fact that the defendant continued to question both Dardinski and Hansen about how many times they had laundered money is further evidence that at least $200,000 was forseeable to the defendant.  In fact, the defendant was told by both Dardinski and Hansen that they had laundered money on not one, but two occasions.  In the recorded conversations, Dardinski repeatedly advised the defendant that he had a significant amount of money that he needed to "clean."  The notion that defendant believed that the laundering of the first $100,000 was some isolated, one-time event is completely belied by the evidence at trial.[2]

---

[2] Of course, separate and apart from the $200,000 he laundered with Hansen and Dardinski, the jury also convicted defendant of laundering the $17,000 he structured at the two Bank of America branches, as well as the $2,500 he paid Dardinski for "office disposal," but which was, in fact, 10% of the $25,000 retainer fee defendant was paid by the undercover drug dealer to whom he was introduced by Dardinski.  It should be noted that, based on the above, the government could have recommended that the defendant receive an additional two-level upward adjustment for laundering between $200,000 - $400,000 under USSG § 2B1.1(b)(1)(H).

3

In sum, the government believes that the GSR calculated by Probation is correct.[3]

## 2. Michael Hansen's Sentence Does Not Provide a Basis To Reduce Defendant's Sentence

In the case of United States v. Hansen, 11-10386-DJC, despite the government's recommended sentence of 18 months' incarceration, Judge Casper ultimately sentenced Hansen to one year and a day. Nothing about Hansen's case or sentence, however, provides a basis to sentence defendant below the GSR. First, when Hansen was approached by law enforcement, he immediately agreed to cooperate. He promptly turned over the official government funds he had received from Dardinski from the first transaction and agreed to forfeit the rest. He retained counsel and began to meet with the government in extensive proffer sessions. He agreed to wear a wire and record all conversations with the defendant. He met with the defendant. By doing so, he took considerable risks to himself and his family. His business suffered substantial harm as a result of his crimes and the publicity they received. Further, Hansen was

---

[3] If anything, Probation could have calculated defendant's GSR as four points higher. First, as discussed above in footnote 2, defendant did actually launder over $200,000, albeit not all as part of the conspiracy count which determines the GSR. Second, although admittedly a close call, defendant did not receive a two-level upward adjustment for use of a special skill, pursuant to USSG § 3B1.3. These two adjustments would have resulted in a TOL of 30 and a sentencing range of 97-121 months. It should also be noted that, despite a history of failing to file tax returns and not paying taxes on his substantial income, defendant was not charged with any tax crimes.

not even in the government's sights until the defendant brought him into this conspiracy.

Although the government ultimately decided not to call him at trial, Hansen also agreed to testify and do whatever was necessary to help the government.  Moreover, Hansen, without whom the government might not have had sufficient evidence to prosecute the defendant, received a reduction in sentence for his acceptance of responsibility.  This is in stark contrast to the defendant, who went to trial and continues to disclaim any responsibility for his crimes.  For all of these reasons, the two men are not similarly situated, and the sentence Hansen received does not provide a basis to sentence defendant below 63 months.[4]

**3.   Sentencing Manipulation**

This brings us to defendant's claim of sentencing factor manipulation, which occurs when the government "improperly enlarges[s] the scope or scale of [a] crime" to secure a longer sentence than would otherwise obtain. United States v. Fontes, 415 F.3d 174, 180 (1st Cir. 2005); United States v. Vasco, 564 F.3d 12, 24 (1st Cir. 2009)(quoting United States v. Fontes; 415 F.3d 174, 180 (1st Cir. 2005); accord United States v. Montoya, 62 F.3d 1, 3-4 (1st Cir. 1995).  This claim is unsupported by the evidence and should be rejected as well.

---

[4] In fashioning Hansen's sentence, Judge Casper also considered his very serious family circumstances and health-related issues.

For the Court to adjust a sentence downward based on sentencing factor manipulation, the Court must conclude that the government has improperly enlarged the scope or scale of the crime to secure a higher sentence. See Montoya, 62 F.3d at 3-4; United States v. Connell, 960 F.2d 191, 194 (1st Cir. 1992). The defendant bears the burden of making such a showing, United States v. Jaca-Nazario, 521 F.3d 50, 57 (1st Cir. 1994), and in this circuit the threshold is very high, e.g., United States v. Richardson, 515 F.3d 74, 86 n.8 (1st Cir. 2008)(requiring "an extreme and unusual case" such as "'outrageous and intolerable pressure' or 'illegitimate motive on the part of the agents'" (quoting Montoya, 62 F.3d at 4)); Jaca-Nazario, 521 F.3d at 58 (requiring "extraordinary misconduct").

Here, there was no wrongful manipulation. First, there was no evidence that the government or CW exerted any real pressure, let alone undue pressure, to launder drug money. It was the defendant who giddily advised the CW that Hansen was willing "to do the rest" - meaning the drug money. Second, there was and is no evidence that the government enlarged the scope or scale of the crime to secure a higher sentence. Finally, the jury received an entrapment instruction and rejected this defense because the evidence was overwhelming that the defendant was, at all times, a ready and willing participant in this drug money laundering conspiracy.

## 4.  **18 U.S.C. § 3553**

Consideration of the 18 U.S.C. § 3553 factors also compels a sentence of sixty-three months' incarceration.

    a.  <u>18 U.S.C. § 3553(a)(1) - Nature and Circumstances of Offense and Defendant's History</u>

As the Court is no doubt aware, after a lengthy trial and approximately two hours of deliberation, the jury found that defendant, a highly-educated, experienced, and long-time member of the Massachusetts criminal defense bar, committed all seven crimes with which he was charged. For his crimes, defendant made at least $20,000.

    b.  <u>18 U.S.C. § 3553(a)(2)(A) and (B) - Need to Promote Respect For the Rule of Law, Provide Just Punishment For the Offense, and Afford Adequate Deterrence</u>

In light of the very serious nature of defendant's crimes, the Court should send a strong message that crimes by attorneys, especially attorneys who help former clients launder drug money and refuse to accept responsibility, will be met with severe consequences. Put simply, 63 months' incarceration for a defendant, who, prior to this case, had no criminal history, sends that message.

Finally, contrary to defendant's claim, the 66-month sentence of criminal defense attorney Lawrence M. Perlmutter in <u>United States v. Perlmutter</u>, 10-10061-NMG, three months higher than the sentence the government is recommending here, does not provide a

basis to reduce defendant's sentence. Perlmutter, who profited about the same amount as defendant from his money laundering activity, but whose GSR was substantially higher, accepted responsibility and agreed to plead guilty approximately two weeks prior to his trial, saving the government substantial resources and trial risk.

## **CONCLUSION**

For the foregoing reasons, the Court should sentence defendant to a term of incarceration of 63 months, a fine of $12,500, a term of three years of supervised release, forfeiture as specified in the government's motion, and a special assessment of $700.

                                     Respectfully submitted,

                                     CARMEN M. ORTIZ
                                     UNITED STATES ATTORNEY

                  By:
                          */s/ Laura J. Kaplan*
                          LAURA J. KAPLAN
                          ZACHARY R. HAFER
                          Assistant U.S. Attorneys

Date: October 30, 2012

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                          /s/ Laura J. Kaplan
                                          LAURA J. KAPLAN
                                          Assistant U.S. Attorney

Date: October 30, 2012