1

```
1                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2


3

    UNITED STATES OF AMERICA        )
4                                   )
                                    )
5    vs.                            )  CR No. 11-10201-NMG
                                    )
6                                   )
    ROBERT A. GEORGE                )
7


8    BEFORE:  THE HONORABLE NATHANIEL M. GORTON


9                        DAY ONE OF JURY TRIAL

10

11   APPEARANCES:

12        OFFICE OF THE UNITED STATES ATTORNEY (By:  Laura Kaplan,
          AUSA, and Zachary Hafer, AUSA), One Courthouse Way,
13        Boston, Massachusetts 02210.  On Behalf of the Government.

14        LAW OFFICE OF ROBERT M. GOLDSTEIN (By:  Robert M.
          Goldstein, Esq.), 20 Park Plaza, Boston, Massachusetts
15        02116.
          - And -
16        LAW OFFICE OF KEVIN J. REDDINGTON (By:  Kevin J.
          Reddington, Esq.), 1342 Belmont Street, Brockton,
17        Massachusetts 02301.  On Behalf of the Defendant.

18
                 John Joseph Moakley United States Courthouse
19                           Courtroom No. 4
                            One Courthouse Way
20                           Boston, MA 02210
                         Tuesday, May 29, 2012
21                             9:55 a.m.

22
                     Cheryl Dahlstrom, RMR, CRR
23                      Official Court Reporter
                 John Joseph Moakley United States Courthouse
24                   One Courthouse Way, Room 3209
                            Boston, MA 02210
25           Mechanical Steno - Transcript by Computer
```

P R O C E E D I N G S

THE CLERK:  This is Criminal Action No. 11-10201, the United States of America vs. Robert George.  The Honorable Nathaniel M. Gorton presiding.  Court is now in session.

THE COURT:  Good morning, ladies and gentlemen.  My name is Nathaniel Gorton, and I am the United States district judge assigned to preside over this session of the United States District Court.  And the first thing we need to do this morning is to swear you in.  And the reason that we swear you in is that this is a very important part of the case where we select the jurors to hear a specific case.  The parties in this case have a constitutional right to a jury that is as fair and impartial as humanly possible.  And, therefore, we go through this process of picking a jury.

Now, in order to pick a fair and impartial jury, I will need to start by asking you all a few questions.  If you answer any of my questions yes or if you think your answer might be yes, please raise your hand.  If you raise your hand, I will simply ask you to identify yourself, and we will note which question it was that you answered affirmatively.  Then when and if you are selected to sit in the jury by the deputy clerk when she calls you at random, I will call you over here to sidebar and inquire about those questions that you answered affirmatively, and maybe the lawyers will ask you a few questions.

1          Please do not hesitate to raise your hand in response

2     to any of my questions or feel any embarrassment about doing

3     so.  You are not being judged here, and when you are asked

4     about your opinions or your feelings, you are entitled to them.

5     It is just that when those opinions become relevant to the

6     case, the parties are entitled to know them as well.  It is

7     very important that we select a fair and impartial jury.

8          Now, I will briefly describe the case and introduce

9     you to the lawyers and to the defendant and read a list of the

09:57 10    names of the people who may be called as witnesses.  If you

11    know any of the persons involved in this case or if you have

12    any preconceived notion about the case, please raise your hand.

13    If you're not chosen to sit on this jury, do not think that it

14    reflects upon your ability to be a good juror.  It is very

15    important to the litigants in this case that if you think your

16    answer would be yes to any of my questions that you raise your

17    hand.  Now, I'll ask the deputy clerk to swear you in as the

18    jury pool.

19    (Venire sworn.)

09:58 20         THE COURT:  Ladies and gentlemen, the case on which

21    you have been called to sit as jurors is a criminal case

22    entitled The United States vs. Robert George.  Generally, the

23    United States Government alleges that the defendant, who is an

24    attorney practicing law in Massachusetts, has conspired to

25    commit money laundering and has engaged in money laundering

1    transactions with respect to the proceeds which purportedly

2    derived from the sale of illegal narcotics.

3         The defendant has pled not guilty to these charges;

4    therefore, he starts out absolutely innocent.  No one can be

5    found guilty of anything in a court until and unless the

6    government proves that person charged is guilty of a specific

7    crime beyond a reasonable doubt.  You, as jurors, can draw no

8    inference against the defendant simply because he has been

9    indicted and is here with us in court today.  An indictment is

09:59 10    simply a charge against someone, nothing more.

11         Now, I'd like counsel to introduce themselves and the

12    defendant, and I'd also like counsel to state the name and

13    location of the law firms with which they are associated or law

14    offices.  We'll start with Miss Kaplan.

15         MS. KAPLAN:  Good morning.  Laura Kaplan, assistant

16    United States attorney.

17         MR. HAFER:  Good morning.  Zach Hafer, also an

18    assistant United States attorney.

19         MR. GOLDSTEIN:  Good morning, ladies and gentlemen.

09:59 20    My name is Robert Goldstein.  I'm a lawyer.  I have an office

21    here in Boston.

22         MR. REDDINGTON:  Good morning, jurors.  My name is

23    Kevin Reddington.  I have an office in Brockton.  I live in

24    Hull.  And I represent Bob George.

25         THE COURT:  All right.  Do you know or are you related

1    to or acquainted with or, to your knowledge, is a member of

2    your family related to or acquainted with the defendant in this

3    case?  Yes, ma'am, in the first row, your name, please?

4              MS. MARVITZ:  Terra Marvitz.

5              THE COURT:  Miss Marvitz.  Miss Marvitz, you're No.

6    28.  And as we go through this process, if you can remember

7    your number each time, it will help.  Anybody else?  All right.

8              Have you heard of the defendant or of any prior cases

9    that he has been involved with as an attorney?  Miss Marvitz,

10:00 10   No. 28.  Anyone else?  Yes, ma'am, in the first row, your name?

11             MS. LEIFER:  Marcia Leifer.

12             THE COURT:  I'm sorry?

13             MS. LEIFER:  Leifer.

14             THE COURT:  Leifer?  Leifer.  Number 45, Miss Leifer.

15   Anyone else?  Okay.

16             As you know -- rather, do you know or are you related

17   to or acquainted with or is a member of your family related to

18   or acquainted with any of the lawyers in this case?  In the --

19   let's say in the third row on this side, yes, ma'am?

10:01 20            MS. FERRON:  Debra Ferron.

21             THE COURT:  Miss Ferron is No. 9.  Over on this side,

22   yes, sir?

23             MR. ARONSON:  Mark Aronson.

24             THE COURT:  Mr. Aronson is No. 12.  Yes, ma'am, in the

25   first row?

1          MS. MARSHALL:  Gayle Marshall.

2          THE COURT:  Miss Marshall is No. 32.  Anyone else?

3     All right.

4          As we go through this process, if you would like me to

5     repeat any question, please raise your hand, and I will be glad

6     to do that.  Sometimes they get rather long and involved, and

7     I'd be glad to repeat the question if you'd like that.

8          Have you or any members of your family had any

9     dealings with or been employed by any of the lawyers or the law

10:02 10    firms involved in this case?

11         Have you or any member of your family ever been

12    employed by the United States Attorney's Office?

13         Now, the following is a list of people who may be

14    called as witnesses in this case.  Not all of them will

15    actually be called, but I've asked the lawyers to give me a

16    list of all potential witnesses.  All of them live or work in

17    the state of Massachusetts; and as to each, I will identify the

18    city or town where that witness lives or works.

19         Starting with Paul Crowley of Andover; Timothy Reardon

10:02 20    of Barnstable; Peter LeCam of Charlestown; Mr. Stephen David

21    and Paul Marino of Dedham; Michael Hansen and Cindy Hansen of

22    Dover.  And the following three are from Hyannis:  Britney

23    Lariviere; Robert Miller, Jr.; Kevin O'Neil, all from Hyannis.

24    Mark Smith of Malden; Alyson Lobisser of Needham; Thomas

25    Finigan and Susan Jacobson of Norfolk; Thomas Rizzitano of

1    Norwood; Nikki Warren of Orleans; Richard Neeley of Quincy;

2    Kelly McManus Souza of Sandwich; Ronald Dardinski, West

3    Bridgewater; Paul Toland, Westwood; Joseph Sirignano, Whitman;

4    Matt Hamilton, Groton.  And the following, all of these either

5    live or work in Boston:  Frank Conway, Calice Couchman, James

6    Dilday, Tom Donahue, Paul Gazzara, Rachel Hershfang, Edward T.

7    Hinchey, Robert Kew, Lori Moccaldi, Pedro Nieves, Carmen Ortiz,

8    Gerald O'Rourke, Jack Pirozzolo, Ryan J. Talbot, Joseph

9    Tamuleviz.  That's spelled T-a-m-u-l-e-v-i-z.

10:04 10          Now, do you know or are you related to or acquainted

11   with or is a member of your family related to or acquainted

12   with any of these potential witnesses?  In the first row, yes.

13          MS. OWEN:  Tracy Owen.

14          THE COURT:  Miss Owen is No. 19.  Anyone else?

15          Okay.  Now, some general questions.  Have you or a

16   member of your family ever been employed by or closely

17   acquainted with someone employed by a federal, state or local

18   police department or law enforcement agency, whether in a

19   civilian or military capacity?  We'll start on this side, in

10:05 20  the back row, yes, sir.

21          MR. POZERSKI:  Stanley Pozerski.

22          THE COURT:  How do you spell that?

23          MR. POZERSKI:  P-o-z-e-r-s-k-i.

24          THE COURT:  I'm sorry.  Spell that again, please, sir.

25          MR. POZERSKI:  P, as in Peter, o-z-e-r-s-k-i.

1          THE COURT:  Mr. Pozerski is No. 27.  In that same row,

2     ma'am.

3          MS. MOREL:  Morel, Justine Morel.

4          THE COURT:  Miss Morel is No. 29.  In that same row.

5          MS. NELSON:  Nancy Nelson.

6          THE COURT:  Miss Nelson, you are 16.  Going forward

7     now, in the next row, yes, ma'am.

8          MS. ZAKRZEWSKI:  Michelle Zakrzewski.

9          THE COURT:  Miss Zakrzewski is No. 58.  Next to her?

10:06 10          MS. FERRON:  Debra Ferron.

11          THE COURT:  Miss Ferron is No. 9.  Now we're going to

12     the center section.  In the second row, sir.

13          MR. McCABE:  Zachary McCabe.

14          THE COURT:  Mr. McCabe is No. 31.  In the back row,

15     sir.

16          MR. BUCKLEY:  Kevin Buckley.

17          THE COURT:  Mr. Buckley is No. 40.  Anyone else?  Yes,

18     over here in the first row, ma'am.

19          MS. GORALSKI:  Margaret Goralski.

10:06 20          THE COURT:  Miss Goralski is No. 60.  In that same

21     section, yes, ma'am.

22          MS. HATCH:  Susan Hatch.

23          THE COURT:  Miss Hatch is No. 37.  Behind -- yes.

24          MS. ASAFF:  Paula Asaff.

25          THE COURT:  Miss Asaff is No. 56.  In the second row,

1    sir.

2              A JUROR:  Could you repeat the question?

3              THE COURT:  Yes, I will.  Have you or a member of your

4    family ever been employed by or closely acquainted with someone

5    employed by a federal, state or local police department or law

6    enforcement agency, whether in a civilian or military capacity?

7    Yes, sir.

8              MR. O'CONNOR:  Michael O'Connor.

9              THE COURT:  Mr. O'Connor is No. 26.  In the second

10:07 10   row, sir.

11             MR. MURPHY:  Timothy Murphy.

12             THE COURT:  Mr. Murphy is No. 21.  In the first row,

13   ma'am.

14             MS. FELZANI:  Rose Felzani.

15             THE COURT:  I'm sorry.  The last name is?

16             MS. FELZANI:  Felzani, F-e-l --

17             THE COURT:  Miss Felzani is No. 30.  In the back row,

18   sir.

19             MR. HUNT:  Geoffrey Hunt.

10:07 20        THE COURT:  Mr. Hunt is No. 43.  In the second row,

21   sir.

22             MR. MANNING:  David Manning.

23             THE COURT:  Mr. Manning is No. 2.  And in the second

24   row, ma'am.

25             MS. MILANI-JONAS:  Linda Milani-Jonas.

          1              THE COURT:  Miss Milani -- I'm sorry.  Try that again.

          2      Milani-Jonas, here we go.  Number 8.  Thank you.  Now in the

          3      back row, yes, sir.

          4              MR. LANE:  Robert Lane.

          5              THE COURT:  Mr. Lane is No. 7.  I'm over in the back

          6      on this side.

          7              MS. McCARTHY:  Carla McCarthy.

          8              THE COURT:  Miss McCarthy is No. 35.  In that same

          9      section, in the second row, ma'am, yes.

10:08    10              MS. MACKENZIE:  Esther Mackenzie.

         11              THE COURT:  Miss Mackenzie is No. 33.  Next to her.

         12              MS. FU:  Fu, Wei.

         13              THE COURT:  Last name is Wei.  Number 4, Miss Wei.

         14              MS. FU:  Last name is Fu.

         15              THE COURT:  We have it as Fu Wei.  You're No. 4, in

         16      any event.  In the first row, sir.

         17              MR. CURCURU:  Dana Curcuru.

         18              THE COURT:  Mr. Curcuru is No. 51.  In the first row,

         19      sir.

10:08    20              MR. DUPUIS:  Donald Dupuis.

         21              THE COURT:  Dupuis is No. 7 -- No. 17.  Anyone else in

         22      that section?  In the second row, sir.

         23              MR. FRANKE:  Robert Franke.

         24              THE COURT:  Mr. Franke is No. 46.  And still in that

         25      section, yes, ma'am.

1          MS. VASQUEZ:  Katty Vasquez.

2          THE COURT:  Miss Vasquez is No. 44.  Anyone else?

3     Yes, ma'am in the first row.

4          MS. SWEENEY:  Sandra Sweeney.

5          THE COURT:  Miss Sweeney is No. 18.  Next to her.

6          MS. REED:  Holly Reed.

7          THE COURT:  Miss Reed is No. 36.  Anyone else?  I

8     probably should have said who doesn't know a policeman.  Okay.

9          More particularly, have you or any member of your

10:09 10    family or a close personal friend ever been employed by the

11    United States Attorney's Office, the Drug Enforcement

12    Administration, the Internal Revenue Service, or the Boston

13    Police Department?  In the very back row, yes, ma'am.

14          MS. McCARTHY:  The Internal Revenue.

15          THE COURT:  Your name, ma'am?

16          MS. McCARTHY:  Carla McCarthy.

17          THE COURT:  Miss McCarthy.  And you are No. 35, right?

18    In the first row, ma'am.

19          MS. HENWOOD:  Nancy Henwood.

10:09 20          THE COURT:  Miss Henwood is No. 13.  In the first row,

21    sir.

22          MR. MAIELLANO:  Joseph Maiellano.

23          THE COURT:  Mr. Maiellano is No. 24.  Thank you.  In

24    the back row, sir.

25          MR. LANE:  Number 7.

1        THE COURT:  Your name?

2        MR. LANE:  Robert Lane.

3        THE COURT:  Mr. Lane, No. 7.  Thank you.  Anyone else?

4   Okay.

5        Now, the law requires you to afford equal

6   consideration to the sworn testimony of all witnesses

7   regardless of whether they are law enforcement officers or not.

8   Does that present any difficulty for you in assessing whether a

9   law enforcement officer or a lay witness is telling the truth

10:10 10  or not?  In the first row.

11        A JUROR:  Could you repeat that?

12        THE COURT:  Yes.  The law requires you to afford equal

13   consideration to the sworn testimony of all witnesses

14   regardless of whether they are law enforcement officers or not.

15   Does that present any difficulty for you in assessing whether a

16   law enforcement officer or a lay witness is telling the truth

17   or not?  Okay.

18        Are you aware of any personal bias or prejudice

19   whatsoever, either in favor of or against, the federal

10:11 20  government, law enforcement officers in general, or this

21   particular defendant in particular that might make it difficult

22   for you to be fair and impartial in this case?  In the second

23   row, sir.

24        MR. KINIGSTEIN:  Zorba Kinigstein.

25        THE COURT:  Mr. Kinigstein is No. 57.  In that same

1  section.

2          MR. HUNTER:  John Hunter.

3          THE COURT:  Mr. Hunter is No. 52.  Anyone else?  Okay.

4          Would the fact that the defendant is a practicing

5  criminal defense attorney, that is, a lawyer who represents and

6  defends persons accused of crimes, make it difficult for you to

7  be fair and impartial in this case?  In the first row, ma'am.

8          MS. HATCH:  Number 37.

9          THE COURT:  Your name?

10:12 10        MS. HATCH:  Susan Hatch.

11         THE COURT:  Miss Hatch, 37, yes.  Anyone else?  In the

12  first row, ma'am.

13         MS. REED:  Holly Reed.

14         THE COURT:  Miss Reed, No. 36.  Anyone else?  Okay.

15         Have you, any member of your family or a close

16  personal friend ever been investigated for or charged with a

17  criminal offense other than a traffic violation?  Over on this

18  side, in the second to last row, yes, ma'am.

19         MS. ZAKRZEWSKI:  Michelle Zakrzewski.

10:13 20        THE COURT:  Spell the last name, please.

21         MS. ZAKRZEWSKI:  Z-a-k-r-z --

22         THE COURT:  I'm sorry.  I didn't get the first letter

23  of the last name.

24         MS. ZAKRZEWSKI:  Z.

25         THE COURT:  Zakrzewski, No. 58, yes.  Thank you.  In

 1    the back row, ma'am.

 2              MS. NELSON:  Nancy Nelson, 16.

 3              THE COURT:  Miss Nelson, 16, yes.  Anyone else in that

 4    section?  Now in the back row of this section.

 5              MS. MACBETH:  MacBeth, M-a-c.

 6              THE COURT:  Miss MacBeth is No. 11.  In the back row,

 7    ma'am.

 8              MS. DOONER:  Amanda Dooner.

 9              THE COURT:  Miss Dooner is No. 48.  In the first row,

10:13 10    ma'am.

11              MS. FELZANI:  Rose Felzani.

12              THE COURT:  Last name is spelled?

13              MS. FELZANI:  F-e-l-z-a-n-i.

14              THE COURT:  Yes, No. 30.  Thank you.  In the first

15    row, ma'am.

16              MS. MARSHALL:  Gayle Marshall, 32.

17              THE COURT:  Miss Marshall, 32, yes.  In the second

18    row, ma'am.

19              MS. VASQUEZ:  Katty Vasquez.

10:14 20              THE COURT:  Miss Vasquez is No. 44.  Yes, in the

21    second row.

22              MS. ARONSON:  Mark Aronson, No. 12.

23              THE COURT:  Mr. Aronson, 12.  Thank you.  Anyone else?

24    Okay.

25              Have you or any member of your family or a close

1    personal friend ever been involved in a civil or criminal

2    proceeding as a party, a witness, a juror or a grand juror?

3    We'll start on this side, in the very back row, yes, ma'am.

4              MS. McCARTHY:  35, Carla McCarthy.

5              THE COURT:  Miss McCarthy, 35, yes.  In the same back

6    row, yes, ma'am.

7              MS. NELSON:  16, Nancy Nelson.

8              THE COURT:  Miss Nelson, 16.  Thank you.  In the

9    second row, ma'am.

10:14 10         MS. MACKENZIE:  Esther Mackenzie.

11             THE COURT:  Miss Mackenzie, No. 33.  Behind her.

12             MS. ZAKRZEWSKI:  Michelle Zakrzewski.

13             THE COURT:  Yes, 58, Miss Zakrzewski.  In the second

14   row, sir.

15             MR. FRANKE:  Robert Franke.

16             THE COURT:  Mr. Franke, No. 46.  In the second row,

17   ma'am?

18             MS. FU:  Wei Fu.

19             THE COURT:  Wei Fu, No. 4.  Anyone else there?  Now

10:15 20   we're in the first row, in this center section, yes, ma'am.

21             MS. OWEN:  Tracy Owen.

22             THE COURT:  Miss Owen, No. 19.  Next to her.

23             MS. SWEENEY:  Sandra Sweeney.

24             THE COURT:  Miss Sweeney was No. 18.  Next to her.

25             MS. REED:  Holly Reed.

1          THE COURT:  Miss Reed, again, was No. 36, right?

2     Behind -- in the second row, sir.

3          A JUROR:  Would you repeat the question again, Judge?

4          THE COURT:  Yes.  Have you, any member of your family

5     or a close personal friend ever been involved in a civil or

6     criminal proceeding as a party, a witness, a juror or a grand

7     juror?  Your name, sir?

8          MR. MANNING:  David Manning.

9          THE COURT:  Mr. Manning is No. 2.  Next to him.

10:15 10          MS. AVELLANI:  Catherine Avellani.

11          THE COURT:  Miss Avellani is No. 41.  And behind her.

12          MS. FREEMAN:  Elizabeth Freeman.

13          THE COURT:  Miss Freeman, you are No. 38.  In the

14     second row, sir.

15          MR. MURPHY:  Timothy Murphy.

16          THE COURT:  Mr. Murphy, No. 21.  In the back row,

17     ma'am.

18          MS. DOONER:  Amanda Dooner.

19          THE COURT:  Miss Dooner, No. 48.  Now, in the second

10:16 20     row, sir.

21          MR. O'CONNOR:  Michael O'Connor.

22          THE COURT:  Mr. O'Connor is No. 26.  In the very back

23     row.  Yes, anyone in the back row?  Keep the hands up in the

24     back row, please.  Yes, sir.

25          MR. LANE:  Robert Lane.

 1              THE COURT:  Mr. Lane, No. 7.  Anyone else?  Yes, sir.

 2              MR. HUNT:  Geoffrey Hunt.

 3              THE COURT:  Mr. Hunt is No. 43.  Now we're in the

 4       second row -- still in the back row.

 5              MR. BUCKLEY:  Kevin Buckley.

 6              THE COURT:  Mr. Buckley, No. 40.  Now we're in the

 7       second row.  Anyone in the second row?  Now in the first row,

 8       yes, ma'am.

 9              MS. MARVITZ:  Terra Marvitz.

10:17 10       THE COURT:  Miss Marvitz, No. 28.  Next to her.

11              MS. BRADLEY:  Christine Bradley.

12              THE COURT:  Miss Bradley is No. 23.  Next to her.

13              MS. FELZANI:  Rose Felzani.

14              THE COURT:  Felzani is No. 30.  Still in the first

15       row.  We're all done with this section.  Now over here in the

16       second row, sir.

17              MR. KINIGSTEIN:  Kinigstein.

18              THE COURT:  Kinigstein, yes, 57.  Next to him.

19              MR. GALLAGHER:  Robert Gallagher.

10:17 20       THE COURT:  Mr. Gallagher is No. 53.  Still in that

21       second row.

22              MR. HUNTER:  John Hunter, 52.

23              THE COURT:  Mr. Hunter, 52.  In the second row.

24              MS. ASAFF:  Paula Asaff, 56.

25              THE COURT:  Miss Asaff, 56.  In the first row, sir.

1    In the first row, ma'am.

2             MS. GORALSKI:  Margaret Goralski, 60.

3             THE COURT:  Ms. Goralski, 60, yes.  In the first row,

4    ma'am.

5             MS. HATCH:  Susan Hatch.

6             THE COURT:  Miss Hatch, 37.  Next to her.

7             MR. LAFFERTY:  Michael Lafferty.

8             THE COURT:  Mr. Lafferty is No. 20.  Have I gotten

9    everybody?  Yes, over here in the third row, yes, sir.

10:18 10          MR. DONNELLY:  Donnelly, Richard.

11            THE COURT:  Mr. Donnelly is No. 6.  Anyone else?  Yes,

12   sir.

13            MR. ROUSSEL:  Hugue Roussel.

14            THE COURT:  Mr. Roussel is No. 5.  Okay.

15            Have you or any member of your family ever been the

16   victim of a crime?  In the very back row, on this side, yes,

17   sir.

18            MR. POZERSKI:  Stanley Pozerski.

19            THE COURT:  Mr. Pozerski is No. 27.  In that same row,

10:18 20   ma'am.

21            MS. MOREL:  Morel.

22            THE COURT:  I'm sorry.  Give it to me again, your last

23   name.

24            MS. MOREL:  Justine Morel, M-o-r --

25            THE COURT:  Miss Morel is No. 29.  In the next row in

1    front of her.

2              MS. ZAKRZEWSKI:  Michelle Zakrzewski.

3              THE COURT:  Ms. Zakrzewski is 58, right?  In front of

4    her.

5              MS. MACKENZIE:  Terra Mackenzie.

6              THE COURT:  Miss MacKenzie is No. 33.

7              MS. HENWOOD:  Nancy Henwood, 13, yes.

8              THE COURT:  Yes, 13.  In the first row, sir.

9              MR. DUPUIS:  Donald Dupuis.

10:19 10        THE COURT:  Dupuis.  Yes, I'm sorry.  Number 17.  Now,

11   in the first row, on this side, yes, ma'am.

12             MS. CURLEY:  Sarah Curley.

13             THE COURT:  Ms. Curley is No. 39.  And in the first

14   row, staying in the first row.

15             MS. OWEN:  Tracy Owen, 19.

16             THE COURT:  Owen, 19.  Next to her.

17             MS. SWEENEY:  Sandra Sweeney.

18             THE COURT:  Miss Sweeney is No. 18.  Next to her.

19             MS. REED:  Holly Reed.

10:19 20        THE COURT:  Miss Reed was No. 36.  In the first row,

21   yes, sir.

22             MR. JENDRO:  James Jendro.

23             THE COURT:  With a G?

24             MR. JENDRO:  With a J.

25             THE COURT:  With a J, okay.  Mr. Jendro is 15.  Next

     1     to him.

     2               MS. MARVITZ:  Terra Marvitz, 28.

     3               THE COURT:  Marvitz, 28, yes.  Now we're in the second

     4     row, yes, ma'am.

     5               MS. MILANI-JONAS:  Linda Milani-Jonas.

     6               THE COURT:  Miss Milani-Jonas is No. 8.  In that same

     7     second row.

     8               MR. MURPHY:  Timothy Murphy.

     9               THE COURT:  Mr. Murphy is No. 21.  Again, in that --

10:20 10     in the second row, yes, ma'am.

    11               MS. SLOSSBERG:  Elizabeth Slossberg.

    12               THE COURT:  Miss Slossberg is No. 59.  Anyone else?

    13     In the back row.

    14               MR. LANE:  Robert Lane.

    15               THE COURT:  Mr. Lane is 7.  Over on this side now, in

    16     the second row, sir.

    17               MR. GALLAGHER:  Robert Gallagher.

    18               THE COURT:  Mr. Gallagher, No. 53.  Next to him.

    19               MR. HUNTER:  John Hunter, 52.

10:20 20               THE COURT:  Hunter, 52.  In the first row, did I have

    21     some hands?  No.  Have I gotten everybody?  Okay.

    22               Have you heard, read or seen anything about this case

    23     before you came into court this morning?  In the first row,

    24     ma'am, your name.

    25               MS. LEIFER:  Marcia Leifer.

```
 1              THE COURT:  Leifer, No. 45.  In the first row, ma'am.
 2              MS. SWEENEY:  Sandra Sweeney.
 3              THE COURT:  Miss Sweeney, No. 18.  In the back row,
 4    sir.
 5              MR. COLLINS:  Steven Collins.
 6              THE COURT:  Collins?
 7              MR. COLLINS:  Collins.
 8              THE COURT:  Mr. Collins, No. 25.  In the second row,
 9    sir.
10              MR. O'CONNOR:  Michael O'Connor.
11              THE COURT:  Mr. O'Connor, 26.  Behind him.
12              MR. LANE:  Robert Lane.
13              THE COURT:  Lane, 7.  Anyone else?  In the second row,
14    sir.
15              MR. GALLAGHER:  Robert Gallagher.
16              THE COURT:  Mr. Gallagher, No. 53.  In the first row,
17    ma'am.
18              MS. HATCH:  Susan Hatch, 37.
19              THE COURT:  Miss Hatch, 37.  Next to her.
20              MR. LAFFERTY:  Michael Lafferty.
21              THE COURT:  Mr. Lafferty, No. 20.  Anyone else?  Okay.
22         Have you discussed this case with anyone, including
23    other people in the jury pool, right up to this very moment?
24         Have you formed any opinion at all concerning this
25    case from what I have told you, from meeting the lawyers and
```

1    the defendant or from watching these proceedings thus far?

2         Do you have any hearing, language or visual

3    impairment, or do you suffer from any medical or emotional

4    condition that may affect your ability to give full attention

5    to all of the evidence at this trial?  In the second row,

6    ma'am.

7         MS. MILANI-JONAS:  Linda Milani-Jonas, No. 8.

8         THE COURT:  Ms. Milani-Jonas, Number 8.  Yes, in the

9    second row, ma'am.

10:22 10         MS. VASQUEZ:  Katty Vasquez, No. 44.

11        THE COURT:  Miss Vasquez, No. 44.  Anyone else?  In

12   the second row.

13        MR. ROUSSEL:  Number 5, Hugue Roussel.

14        THE COURT:  Mr. Roussel, No. 5, yes.  Anyone else?

15   Yes, ma'am.

16        MS. FU:  Wei Fu.

17        THE COURT:  Miss Wei Fu, No. 4.  Anyone else?

18        Do you have any doubt that you will be able to render

19   a verdict based solely on the evidence presented to you in this

10:23 20   courtroom and on the law that I will provide for you in my

21   instructions, disregarding any other ideas or beliefs that you

22   may have?  In the second row, sir.

23        MR. HUNTER:  52, Hunter.

24        THE COURT:  Mr. Hunter, No. 52.  Anyone else?  Yes.

25        MS. ASAFF:  Paula Asaff, 56.

 1          THE COURT:  Miss Asaff, No. 56.  Anyone else?  Yes,

 2     ma'am.

 3          MS. HATCH:  Susan Hatch, 37.

 4          THE COURT:  Miss Hatch, No. 37.  Anyone else?

 5          Do you have any bias at all that might prevent you

 6     from rendering a fair and impartial verdict in this case?  And

 7     by "bias," I mean do you favor either side or oppose either

 8     side for any reason whatsoever?  In the second row.

 9          MR. HUNTER:  52, Hunter.

10:23 10          THE COURT:  Mr. Hunter, No. 52.  Anyone else?  All

11     right.

12          Now, a few words about the schedule.  In this session,

13     we will start each morning at about 9 a.m.  We will take a

14     short morning recess and then later break for lunch at about 1,

15     reconvene at 2, and then proceed with the trial until

16     approximately 3 or 3:30.  On days on which you are deliberating

17     to a verdict, we will continue until approximately 5 p.m.  The

18     trial will commence tomorrow, after we impanel the jury today,

19     and will continue from day to day.  And it will be completed,

10:24 20     in all likelihood, before the end of next week, that is, by

21     Friday, June 8th.

22          With that schedule in mind, do you know of any reason

23     why you ought not to be called to sit as a juror in this case?

24     We'll start on this side, in the second to last row, yes, sir.

25          MR. DONNELLY:  Donnelly, No. 6.

1          THE COURT:  Mr. Donnelly, No. 6.  In the next row,

2     Miss Wei Fu, No. 4.  In front of her.

3          MS. HENWOOD:  Nancy Henwood, No. 13.

4          THE COURT:  Miss Henwood, No. 13.  In the very back

5     row.

6          MS. MOREL:  Justine Morel, No. 29.

7          THE COURT:  Morel, No. 29, yes.  In the center section

8     now, in the second row, yes, ma'am.

9          MS. MILANI-JONAS:  Linda Milani-Jonas, No. 8.

10:25 10          THE COURT:  Milani-Jonas, No. 8.  In the same row,

11     yes, ma'am.

12          MS. AVELLANI:  Catherine Avellani, 41.

13          THE COURT:  Miss Avellani, No. 41.  In that same

14     second row, yes, ma'am.

15          MS. SLOSSBERG:  Elizabeth Slossberg, 59.

16          THE COURT:  Miss Slossberg, No. 59.  In the same row,

17     yes, sir.

18          MS. McCABE:  Zachary McCabe.

19          THE COURT:  Mr. McCabe, No. 31.  Next to him, Mr.

10:25 20     Roussel, No. 5.  In the very back row, yes, ma'am.

21          MS. DOONER:  Amanda Dooner.

22          THE COURT:  Miss Dooner, No. 48.  Next to her.

23          MR. BAIROS:  Nicholas Bairos.

24          THE COURT:  Mr. Bairos is No. 22.  In that back row,

25     yes, ma'am.

1          MS. FREEMAN:  Elizabeth Freeman.

2          THE COURT:  Miss Freeman, No. 38.  Now we're in the

3    first row, yes, ma'am.

4          MS. CURLEY:  Sarah Curley.

5          THE COURT:  Miss Curley, No. 39.  Next to her.

6          MS. MARSHALL:  Gayle Marshall, 32.

7          THE COURT:  Marshall, 32, yes.  Next to her.

8          MS. OWEN:  Tracy Owen, 19.

9          THE COURT:  Owen, 19.  Yes, ma'am.

10:26 10          MS. REED:  Holly Reed.

11          THE COURT:  Miss Reed, No. 36.  Yes, ma'am.

12          MS. BRADLEY:  Christine Bradley, 23.

13          THE COURT:  Miss Bradley, 23, thank you.  Now over on

14    this side, in the first row, ma'am.

15          MS. PHELY-BOBIN:  Phely-Bobin, P-h-e --

16          THE COURT:  Miss Phely-Bobin, No. 55.  In the second

17    row, sir.

18          A JUROR:  Could you repeat the schedule?

19          THE COURT:  Yes.  We are going to start this trial

10:26 20    after we impanel tomorrow.  We will continue day to day this

21    week and next week, and in all likelihood, this case will be

22    done by Friday, June 8th.  Yes, sir.

23          MR. HUNTER:  Number 52.

24          THE COURT:  Mr. Hunter, No. 52.  Anyone else?

25          MS. McCARTHY:  35, Carla McCarthy.

1          THE COURT:  Miss McCarthy, No. 35.  Okay.

2          The deputy will proceed to call a jury.

3          THE CLERK:  Would Juror No. 30, Rose Felzani, please

4     come forward and take Seat No. 1 in the jury box.  The seat is

5     the first one closest to me.  In Seat No. 2, next to Miss

6     Felzani, is Juror No. 23, Christine Bradley.  In Seat No. 3 is

7     Juror No. 44, Katty Vasquez.  Seat No. 4, Juror No. 31, Zachary

8     McCabe.  Seat No. 5, Juror No. 16, Nancy Nelson.  Seat No. 6,

9     Juror No. 45, Marcia Leifer.  Seat No. 7, which is the first

10:29 10    seat in the second row, is juror --

11          THE COURT:  Wait.

12          THE CLERK:  I apologize.  Seat No. 7 is still going to

13    be in the first row.  Juror No. 60, Margaret Goralski.  Seat

14    No. 8, which is the first seat in the second row, is Juror No.

15    12, Mark Aronson.  Seat No. 9 is Juror No. 17, Donald Dupuis.

16    Seat No. 10, Juror No. 50, Zoe Conlon.  Seat No. 11, Juror No.

17    13, Nancy Henwood.  Seat No. 12, Juror No. 2, David Manning.

18    Seat No. 13, Juror 51, Dana Curcuru.  And Seat No. 14, Juror

19    No. 15, James Jendro.

10:31 20         THE COURT:  All right, jurors.  From time to time, you

21    will hear what we call white noise, which is basically static,

22    to more or less preserve the privacy of the conversations that

23    occur at sidebar and that you will hear that from time to time.

24          May I see counsel at sidebar.

25    (SIDEBAR CONFERENCE AS FOLLOWS:

         1          THE COURT:  I want to have both sides -- the potential

         2   juror is going to be standing here.  It might be easier for the

         3   defendants to be over here and the government to be over here.

         4   Switch sides because you'll have three.  It will be Miss Kaplan

         5   speaking for the government?

         6          MS. KAPLAN:  That's fine.

         7          THE COURT:  And Mr. Goldstein for the defendant, is

         8   that right?

         9          MR. GOLDSTEIN:  Yes, that's fine.

10:33   10          THE COURT:  As you know, now what I'm going to do is

        11   ask each of the potential jurors about the questions that

        12   they've just answered affirmatively.  If at any time you have

        13   recorded an affirmative response that I didn't, I will ask you

        14   to call it to my attention, okay?

        15          MR. GOLDSTEIN:  Judge, can we bring one thing to your

        16   attention right now?

        17          THE COURT:  Yes, of course.

        18          MR. GOLDSTEIN:  Juror No. 28.

        19          THE COURT:  28.

10:34   20          MR. GOLDSTEIN:  Her name is Terra Marvitz.

        21          THE COURT:  Marvitz.

        22          MR. GOLDSTEIN:  Just so you know, she was a victim in

        23   a case that Mr. George defended a client on.  It was a rather

        24   brutal -- she was a victim of a rather brutal assault.  We're

        25   concerned, when you speak to her, has she spoken to anyone in

1    the jury about -- we want to make sure that she hasn't said

2    anything to anybody about her experience with Mr. George in

3    that case.  We're pretty -- we're rather concerned about it.

4        THE COURT:  You want me to call her -- she hasn't been

5    called up.  She's not in the jury box now.

6        MR. GOLDSTEIN:  No, no.  I just want --

7        THE COURT:  If she is, we'll have that in mind.  Okay.

8        MR. GOLDSTEIN:  All right.

9        MS. KAPLAN:  The one thing we wanted to point out,

10:35 10   just to point out, that the money laundering conspiracy charge

11   does not just make reference to the drugs -- the money

12   laundering conspiracy count, you referred to the unlawful

13   activity as drugs, but it also says money laundering and money

14   laundering -- and wire fraud.  I'm sorry.

15       THE COURT:  Okay.

16       MS. KAPLAN:  I'm not sure you need to do anything

17   about that now.

18       THE COURT:  Thank you.  I'll try to have it in mind as

19   I go through these questions.

10:35 20   MR. REDDINGTON:  May Mr. George come to sidebar?

21       THE COURT:  Yes, of course.

22       Miss Felzani, will you please come to sidebar.  Come

23   right in now.  You mentioned that you or a member of your

24   family knows a police officer.

25       MS. FELZANI:  I went to high school with a friend who

1     is a police officer.

2               THE COURT:  Whereabouts?

3               MS. FELZANI:  I think it's Wakefield, New Hampshire.

4     I went to high school in -- I think he went to Madison.

5               THE COURT:  Is he still a close friend?

6               MS. FELZANI:  I'm closer with his wife.  I went to

7     high school with his wife.

8               THE COURT:  Do you ever discuss what he does for a

9     living?  Do you see him frequently?

10:36 10          MS. FELZANI:  I see him three or four times a year but

11    just in general what he does at work.

12              THE COURT:  Would that acquaintance with a police

13    officer in any way affect your ability to be fair and impartial

14    in this case which involves -- will involve the testimony of

15    law enforcement officers?

16              MS. FELZANI:  No.

17              THE COURT:  Any questions, Mr. Goldstein?

18              MR. GOLDSTEIN:  Do you ever talk with him about his

19    work or what he does?  And do you get into details about that?

10:36 20          MS. FELZANI:  No, not really.

21              THE COURT:  Miss Kaplan?

22              MS. KAPLAN:  Nothing, Judge.

23              THE COURT:  You also mentioned, Miss Felzani, that you

24    or a member of your family have been investigated or charged

25    with a crime.

1          MS. FELZANI:  My brother was charged and convicted of

2    DUI and served time for that.

3          THE COURT:  How long ago was that?

4          MS. FELZANI:  Two or three years ago.

5          THE COURT:  Do you think that he was treated fairly?

6          MS. FELZANI:  Yes.

7          THE COURT:  Would that experience with the criminal

8    justice system in any way affect your ability to be fair and

9    impartial in this case which, of course, involves allegations

10:37 10   of criminal conduct?

11          MS. FELZANI:  No.

12          THE COURT:  Any questions?

13          MR. GOLDSTEIN:  No.

14          MS. KAPLAN:  No, your Honor.

15          THE COURT:  Finally, Miss Felzani, you mentioned that

16   you or a member of your family had been involved with a civil

17   or criminal proceeding as a party, a witness, a juror -- or a

18   juror.

19          MS. FELZANI:  My brother, his DUI.  But then I also

10:37 20   just served on a jury in Ayer, I think in March, on a DUI case

21   actually.

22          THE COURT:  In a district court case?  A jury of six?

23   Or how many were you on the jury?

24          MS. FELZANI:  I think it was six because it was two

25   alternates.

1          THE COURT:  Would that experience with the criminal

2     justice system in any way affect your ability to be fair and

3     impartial in this case?

4          MS. FELZANI:  No.

5          THE COURT:  Any questions?

6          MR. GOLDSTEIN:  No.

7          MS. KAPLAN:  No.

8          THE COURT:  I believe those were the only questions

9     you answered affirmatively, Miss Felzani.  Have a seat in the

10:38 10     jury, ma'am.  Thank you.

11          Miss Bradley, please.  Good morning, Miss Bradley.

12     You mentioned that you might have a scheduling problem in this

13     case.

14          MS. BRADLEY:  Basic school nonsense with the kids and

15     stuff like that.  My husband travels.  He's going to be out of

16     town all next week.  My parents are at Hilton Head.  It's going

17     to be a little difficult for me to get here.  I can probably

18     make it work.

19          THE COURT:  How old are your kids?

10:38 20          MS. BRADLEY:  Ten, 13, and almost 17.

21          THE COURT:  So the 13 and 17 will probably be okay.

22     The 10 --

23          MS. BRADLEY:  It's the 10, my son.

24          THE COURT:  Do you have somebody helping you today,

25     for instance?

1          MS. BRADLEY:  I just have my next-door neighbor, who

2    just happens to be home today, to --

3          THE COURT:  This is going to be about a two-week case,

4    no more than that.  It's possible it would spill over into that

5    next week but unlikely.  I would ask you to take on

6    inconvenience.  I don't want to --

7          MS. BRADLEY:  I know.

8          THE COURT:  I don't want you to have to endure

9    hardship.  There's a difference between inconvenience and

10:39 10   hardship.  I'm trusting that you can do your civic duty and

11   find a way to avoid a problem.  Can you do that?

12         MS. BRADLEY:  Absolutely.  Can I just make a comment?

13   My husband has worked for Bank of America anti-money

14   laundering.  And although I'm not privy to that information, I

15   understand all about that.  I don't know if that will sway --

16         THE COURT:  Thank you for bringing that to our

17   attention.  Have you discussed with your husband the money

18   laundering?

19         MS. BRADLEY:  In general, yes; specifics to cases, no.

10:39 20   THE COURT:  How long ago?

21         MS. BRADLEY:  Two years ago.

22         THE COURT:  Is he no longer in that section?

23         MS. BRADLEY:  He's no longer in that section.

24         THE COURT:  Would the fact that you have discussed

25   with your husband money laundering and factors that go into it

1    in any way affect your ability to be fair and impartial in this

2    case which involves allegations of money laundering?

3             MS. BRADLEY:  No, I don't think so.  I just understand

4    all about it.

5             THE COURT:  Okay.  Mr. Goldstein?

6             MR. GOLDSTEIN:  Nothing.

7             THE COURT:  Miss Kaplan?

8             MS. KAPLAN:  No, your Honor.

9             THE COURT:  I believe, then, you also mentioned, Miss

10:40  10   Bradley, that you or a member of your family had been involved

11   in a criminal or a civil case as a party, a witness or a juror.

12   Would you tell me about that?

13            MS. BRADLEY:  One of my closest friends was just on a

14   grand jury for three months.

15            THE COURT:  Did she talk to you about her --

16            MS. BRADLEY:  No, just that it was a nightmare, not

17   details.

18            THE COURT:  Would that indirect understanding of what

19   it's like to serve on a grand jury --

10:40  20            MS. BRADLEY:  It's a little frightening to me.

21            THE COURT:  Would it in any way affect your ability to

22   be fair and impartial in this case?

23            MS. BRADLEY:  No.

24            THE COURT:  Any questions, Mr. Goldstein?

25            MR. GOLDSTEIN:  State or federal?

1          MS. BRADLEY:  Taunton, Brockton.  I'm not specifically

2     sure.

3          THE COURT:  Anything else?

4          MR. GOLDSTEIN:  No.

5          THE COURT:  Miss Kaplan?

6          MS. KAPLAN:  No, your Honor.

7          THE COURT:  I believe those are the only two questions

8     you answered affirmatively.  Thank you.  Have a seat in the

9     jury, ma'am.

10:41 10          Miss Vasquez, please.  Good morning, Miss Vasquez.

11     You mentioned that you might have some difficulty or some

12     reason why you couldn't serve as a juror.  Would you tell me

13     about that?

14          MS. VASQUEZ:  I have kidney problems, so I can --

15     kidney problems.  So I basically have to be going back and

16     forth from the bathroom or else I'll start getting pain.  I'm

17     on antibiotics and stuff like that.

18          THE COURT:  First of all, a lot of us, when we get

19     older, have kidney -- maybe not problems but necessities.  And

10:41 20     any time a juror needs to take a break for any reason, I take a

21     break because I understand those problems.  So it's not as

22     though you would have to suffer.  I mean, if it's every five

23     minutes, that's something else but, if it's an hour or so or 20

24     minutes, you need to take a break, you can take a break.  You

25     just raise your hand.  Anybody can do that.  I allow that.

```
 1              MS. VASQUEZ:  I'm taking hydrocodone.

 2              THE COURT:  You're taking hydrocodone?

 3              MS. VASQUEZ:  For pain.

 4              THE COURT:  Are you employed?

 5              MS. VASQUEZ:  Yes, right now I am.

 6              THE COURT:  Where are you employed?

 7              MS. VASQUEZ:  At Draper lab.

 8              THE COURT:  Are you able to work all day at Draper

 9      Lab?

10:42 10         MS. VASQUEZ:  Right now, like, few hours.

11              THE COURT:  Okay.  But you are employed?

12              MS. VASQUEZ:  Yes, I am.

13              THE COURT:  Well, this is a civic duty to serve on a

14      jury.  If you're able to be employed, you're able to serve on a

15      jury.  If you have a problem at any point while we're going

16      through this case and need to take a short recess to go to the

17      bathroom or any other reason, you just raise your hand and we

18      will take a break, okay?

19              MS. VASQUEZ:  Okay.

10:42 20         THE COURT:  You mentioned, also, I believe, Miss

21      Vasquez, that you or a member of your family knows a police

22      officer.  Would you tell me about that?

23              MS. VASQUEZ:  Yes.  Actually, one of my kid's

24      godfather, he works at Lawrence Police Department.

25              THE COURT:  Do you see him regularly and talk to him
```

1    about his job?

2              MS. VASQUEZ:  Yes, I do.

3              THE COURT:  Okay.  Would the fact that you know a

4    police officer who does his job in any way affect your ability

5    to be fair and impartial in this case which is going to involve

6    the testimony of law enforcement officers?

7              MS. VASQUEZ:  No.

8              THE COURT:  Any questions, Mr. Goldstein?

9              MR. GOLDSTEIN:  Would you tend to give greater

10:43 10   credibility to a police officer than a regular person who's

11   testifying?

12             MS. VASQUEZ:  What do you mean with that?  I'm sorry.

13             MR. GOLDSTEIN:  Do you think they're more credible

14   than some other person that testifies?

15             THE COURT:  I'm not sure that's a fair question:

16   "more credible."  Let me put it this way:  If a police officer

17   said "A" happened and a non -- lay witness said, no, no, it was

18   "B" that happened, would you believe the police officer just

19   because he was a police officer?

10:44 20        MS. VASQUEZ:  No.

21             MR. GOLDSTEIN:  Nothing.

22             THE COURT:  Any other questions?

23             MR. GOLDSTEIN:  Nothing further.

24             THE COURT:  Miss Kaplan?

25             MS. KAPLAN:  Nothing, your Honor.

1          THE COURT:  I believe you also mentioned, Miss

2    Vasquez, that you or a member of your family had been charged

3    with a criminal offense.  Would you tell me about at that?

4          MS. VASQUEZ:  My brother.

5          THE COURT:  How long ago?

6          MS. VASQUEZ:  Actually, probably, maybe five years

7    ago.

8          THE COURT:  What was he charged with?

9          MS. VASQUEZ:  DUI, twice.

10:44 10          THE COURT:  Okay.

11          MS. VASQUEZ:  Driving --

12          THE COURT:  Driving under the influence?

13          MS. VASQUEZ:  Yes.

14          THE COURT:  Was he convicted?

15          MS. VASQUEZ:  Yes.

16          THE COURT:  Did he go to jail?

17          MS. VASQUEZ:  Yes.

18          THE COURT:  Were you present at the time of the trial?

19    Did you go?

10:44 20          MS. VASQUEZ:  No.

21          THE COURT:  Would that indirect involvement with the

22    criminal justice system in any way affect your ability to be

23    fair and impartial in this case?

24          MS. VASQUEZ:  I'm against that.

25          THE COURT:  You're against driving under the

1    influence?

2            MS. VASQUEZ:  Yes, I am, no matter what the excuse.

3            THE COURT:  A lot of us are.  But would that in any

4    way affect your ability to be fair and impartial in this case?

5            MS. VASQUEZ:  No, no.

6            THE COURT:  Any questions, Mr. Goldstein?

7            MR. GOLDSTEIN:  No.

8            MS. KAPLAN:  No.

9            THE COURT:  I believe those are the only questions you

10:45 10    answered affirmatively, Miss Vasquez, is that right?

11           MS. VASQUEZ:  Yes.

12           THE COURT:  Please have a seat in the jury, ma'am.

13   Thank you.

14           Mr. McCabe, please.  Good morning, Mr. McCabe.  You

15   mentioned that you might have a scheduling problem.

16           MR. McCABE:  I'm studying for my medical school MCAT,

17   which I will be taking in a month.  I'm under a strict study

18   regimen.

19           THE COURT:  Are you in school now?

10:45 20           MR. McCABE:  I'm home for the summer, but I'm studying

21   for the exam.

22           THE COURT:  When is the exam?

23           MR. McCABE:  First week in July.  I'm also in review

24   classes that are going to start next week, which is pretty

25   pricey.  I'm enrolled in that.  I think there will be a

 1    conflict.

 2            THE COURT:  This is going to be a relatively short

 3    trial, Mr. McCabe.

 4            MR. McCABE:  I just mention it.

 5            THE COURT:  It will go to the end of next week but not

 6    beyond.  Your course doesn't start until next week?

 7            MR. McCABE:  Right.

 8            THE COURT:  It runs for three or four weeks after

 9    that?

10:46 10        MR. McCABE:  I think it's four weeks, up until the

11    exam.

12            THE COURT:  You know, we ask citizens -- it's

13    important for us to have citizens serve on juries.  It's a

14    civic duty, a very important civic duty.  I don't want to cause

15    you hardship.  That means I don't want you to flunk your exam

16    because of this.  On the other hand, it does seem to me that

17    missing only a few days of that course that -- I presume you

18    can look at the tapes of what has happened on those days and

19    maybe even get some work in after you're excused from the jury

10:46 20   here at 3 or 3:30 each afternoon.

21            I'm going to ask you -- unless you tell me that you

22    think it's going to cause you a severe hardship, I'm going to

23    ask you to serve on this jury, at least be willing to serve on

24    it.  Are you willing to do that?

25            MR. McCABE:  Yeah, I would be willing.

 1          THE COURT:  Okay.  Mr. McCabe, you also mentioned you

 2   or someone in your family knows a police officer.  Would you

 3   tell me about that?

 4          MR. McCABE:  My father is a retired town police

 5   officer.

 6          THE COURT:  From what town?

 7          MR. McCABE:  Wareham.

 8          THE COURT:  How long was he a police officer?

 9          MR. McCABE:  He was -- when he was 20 to about -- I

10:47 10   think it will be 18 years.  He was injured on the job and

11   forced to retire.

12          THE COURT:  Before you were born?

13          MR. McCABE:  No.  He was maybe until I was about four

14   years old.

15          THE COURT:  Would the fact that your father was a

16   police officer, who I'm sure you respect his job that he did,

17   would that in any way affect your ability to be fair and

18   impartial in this case which is going to involve the testimony

19   of law enforcement officers?

10:47 20          MR. McCABE:  It would not.

21          THE COURT:  Any questions, Mr. Goldstein?

22          MR. GOLDSTEIN:  No questions.

23          MS. KAPLAN:  No.

24          THE COURT:  Thank you.  I'll have you have a seat in

25   the jury, Mr. McCabe.  Thank you.

1          Miss Nelson, please.  Good morning, Miss Nelson.  You

2     mentioned that you or a member of your family knows a police

3     officer.  Would you tell me about that?

4          MS. NELSON:  Yes.  My brother was a police officer.

5     He's retired.

6          THE COURT:  How long was he a police officer?

7          MS. NELSON:  He's 43.  Maybe 15 or so.

8          THE COURT:  Are you close to your brother?  Do you

9     talk to him about his work as a police officer?

10:48 10          MS. NELSON:  No.

11          THE COURT:  Would the fact that your brother was a

12     police officer in any way affect your ability to be fair and

13     impartial in this case which is going to involve the testimony

14     of law enforcement officers?

15          MS. NELSON:  No.

16          THE COURT:  Any questions, Mr. Goldstein?

17          MR. GOLDSTEIN:  No.

18          THE COURT:  Miss Kaplan?

19          MS. KAPLAN:  No, your Honor.

10:48 20          THE COURT:  You also mentioned, Miss Nelson, that you

21     or a member of your family had been investigated for a criminal

22     offense.

23          MS. NELSON:  I may not have answered that correctly.

24     I'm a nurse.  In 1976, one of my patients assaulted his

25     roommate, who subsequently died as a result of that.  So I

1    spent a week in Dedham Superior Court on that.

2         THE COURT:  So you were a witness to the --

3         MS. NELSON:  Yes.

4         THE COURT:  Did you actually testify at trial?

5         MS. NELSON:  Yes.

6         THE COURT:  Would that involvement with the criminal

7    justice system in any way affect your ability to be fair and

8    impartial in this case which involves allegations of different

9    kinds of criminal conduct?

10:49 10        MS. NELSON:  No.

11        THE COURT:  Any questions, Mr. Goldstein?

12        MR. GOLDSTEIN:  No, your Honor.

13        THE COURT:  Or Miss Kaplan?

14        MS. KAPLAN:  No, your Honor.

15        THE COURT:  Finally, Miss Nelson, you mentioned that

16    you or a member of your family had been involved as a -- in a

17    civil or a criminal case as a party, a witness or a juror.

18        MS. NELSON:  Same case.

19        THE COURT:  Same case.

10:49 20        MS. NELSON:  It ended up being a civil case against

21    the hospital.

22        THE COURT:  So you were involved on behalf of the

23    hospital in a way?

24        MS. NELSON:  Actually, Judge, I was not a witness for

25    the civil trial.

1        THE COURT:  But was your deposition taken?  You were

2    asked questions about it?

3        MS. NELSON:  Yes, yes.

4        THE COURT:  Again, would this in any way affect your

5    ability to be fair in this case?

6        MS. NELSON:  No.

7        THE COURT:  Any questions, Mr. Goldstein?

8        MR. GOLDSTEIN:  No.

9        MS. KAPLAN:  No.

10:50 10        THE COURT:  Thank you.  Have a seat in the jury,

11    ma'am.  Miss Nelson, thank you.

12        Miss Leifer, please.  Good morning, Miss Leifer.  You

13    mentioned that you had heard of or knew the defendant in this

14    case.

15        MS. LEIFER:  Front page in the *Boston Globe* today.

16        THE COURT:  What did you read in the paper today?

17        MS. LEIFER:  It mentioned your name and talked about

18    -- it was front page, and then it went to the back page.

19        THE COURT:  You hadn't had any prior knowledge of Mr.

10:50 20    George?

21        MS. LEIFER:  No, I mean, other than the cases that are

22    mentioned in the article that he had.

23        THE COURT:  Would anything that you read in that

24    article in any way affect your ability to be fair and impartial

25    in this case and to decide this case solely on the basis of the

1    evidence that comes into this courtroom and not on the basis of

2    anything that you read in the paper?

3         MS. LEIFER:  The only thing I thought of was I need an

4    education on what money laundering is because I don't

5    understand the intricacies.

6         THE COURT:  You're not alone.  Lots of people don't

7    know what it is.  But the point is, can you be fair and

8    impartial and decide this case solely on the basis of the

9    evidence that comes into this courtroom and not on the basis of

10:51 10   anything else?

11        MS. LEIFER:  As long as I can be educated on it, yes.

12   And then --

13        THE COURT:  Any questions?

14        MR. GOLDSTEIN:  No.

15        MS. LEIFER:  The only other thing, when you asked

16   about any crime in family, I just didn't think it was

17   pertinent.  My family had a business for 42 years, so it was

18   robbed repeatedly, and they were held up at their business.

19        THE COURT:  Where was the business?

10:51 20        MS. LEIFER:  Sanford, Florida.

21        THE COURT:  They owned a store and it was actually

22   robbed several times?

23        MS. LEIFER:  Constantly, broken in, held up at

24   gunpoint.

25        THE COURT:  Did you ever have to go to court and

1    testify?

2            MS. LEIFER:  No, no.

3            THE COURT:  Would that fact that your parents were

4    involved in matters that --

5            MS. LEIFER:  No.  That's why --

6            THE COURT:  I have to ask the question so she can take

7    it down.

8            MS. LEIFER:  Sorry.

9            THE COURT:  Would that fact that you have lots of

10:52 10   involvement with crime committed against your parents in any

11   way affect your ability to be fair and impartial in this case

12   which involves allegations of different kinds of criminal

13   conduct?

14           MS. LEIFER:  No.

15           THE COURT:  Mr. Goldstein?

16           MR. GOLDSTEIN:  Nothing.

17           MS. KAPLAN:  No.

18           THE COURT:  Now, I believe, Miss Leifer, you

19   mentioned --

10:52 20        MS. LEIFER:  They were both about the article.

21           THE COURT:  They were both about the article.  Thank

22   you.  Have a seat in the jury.  Thank you, ma'am.

23           Miss Goralski, please.  Good morning, Miss Goralski.

24   You mentioned that you or a member of your family knows a

25   police officer.  Would you tell me about that?

 1          MS. GORALSKI:  My niece is a social worker at the

 2     Billerica House of Correction, Laura Kinney.

 3          THE COURT:  Currently?  How long has she been so

 4     employed?

 5          MS. GORALSKI:  Currently.  Probably about five years

 6     maybe.  I'm not sure.

 7          THE COURT:  Do you talk to her about her work?

 8          MS. GORALSKI:  No, absolutely not.

 9          THE COURT:  Would the fact that she is a law

10:53 10     enforcement officer in any way affect your ability to be fair

11     and impartial in this case which is going to involve the

12     testimony of law enforcement officers?

13          MS. GORALSKI:  I would be fair, very fair.

14          THE COURT:  Mr. Goldstein?

15          MR. GOLDSTEIN:  Nothing.

16          MS. KAPLAN:  Nothing, your Honor.

17          THE COURT:  Miss Kaplan?

18          Miss Goralski, you also mentioned that you or a member

19     of your family had been involved in a civil or a criminal

10:53 20     case --

21          MS. GORALSKI:  I was a juror.

22          THE COURT:  I have to finish the question.  -- as a

23     party, a witness or a juror.  Would you tell me about that?

24          MS. GORALSKI:  It was a while ago, and I think it was

25     -- I forget the case it's been so long.

1          THE COURT:  Do you remember where it was?

2          MS. GORALSKI:  It was in Woburn.

3          THE COURT:  In the superior court in Woburn?

4          MS. GORALSKI:  Yes.

5          THE COURT:  It was a civil case?

6          MS. GORALSKI:  Civil case, malpractice.

7          THE COURT:  How did it come out, if you remember?

8          MS. GORALSKI:  I believe the plaintiff won.

9          THE COURT:  Okay.  Would that involvement with the

10:54 10  civil judicial system in any way affect your ability to be fair

11  and impartial in this case?

12          MS. GORALSKI:  No.

13          THE COURT:  Mr. Goldstein?

14          MR. GOLDSTEIN:  Nothing further.

15          THE COURT:  Or Miss Kaplan?

16          MS. KAPLAN:  No.

17          THE COURT:  I believe those were the only two

18  questions you answered.  Have a seat in the jury, ma'am.  Thank

19  you.

10:54 20        Mr. Aronson, please.  Good morning, Mr. Aronson.  You

21  mentioned that you might know one of the lawyers involved in

22  the case.

23          MR. ARONSON:  Yes.  Defense counsel, Kevin Reddington,

24  represented a cousin of mine about ten years ago in a criminal

25  trial.

1          THE COURT:  Were you involved in that case in any way

2     other than by the relationship to the defendant?

3          MR. ARONSON:  No, but I went to the trial.

4          THE COURT:  You attended the trial?

5          MR. ARONSON:  I did attend the trial during the time

6     it was happening.

7          THE COURT:  Did you ever have any direct contact with

8     Attorney Reddington?

9          MR. ARONSON:  I did not.  My family did.  I did not.

10:55 10          THE COURT:  By your "family," you mean your cousin?

11          MR. ARONSON:  Correct, cousin's wife.

12          THE COURT:  Would that fact in any way affect your

13     ability to be fair and impartial in this case in which this

14     attorney of your cousin represents the defendant?

15          MR. REDDINGTON:  I don't know.  I can't -- I don't

16     know.  It might.

17          THE COURT:  Well, I think it's a little too close.  I

18     think the fact that you have a relationship with one of the

19     counsel, even as indirect as being a cousin, makes it

10:55 20     inappropriate for you to serve as a juror on this case.  You

21     may get called on a different case, but I'm going to excuse you

22     from this one.  So you can return to the jury lounge, and she

23     will give you the card and show you how to do that, okay?

24     Thank you, Mr. Aronson.

25          MR. REDDINGTON:  I wish you asked how I did.

```
 1              THE COURT:  Mr. Dupuis, please.  Good morning, Mr.

 2    Dupuis.  Is that how you pronounce it, Dupuis?

 3              MR. DUPUIS:  Yup.

 4              THE COURT:  You mentioned that you or a member of your

 5    family had been the victim of a crime.

 6              MR. DUPUIS:  Yes.

 7              THE COURT:  Would you tell me about that?

 8              MR. DUPUIS:  House break.

 9              THE COURT:  How long ago was that?

10:56 10         MR. DUPUIS:  A few years ago.

11              THE COURT:  In your own house?

12              MR. DUPUIS:  Yes.

13              THE COURT:  Was anyone ever apprehended as a result?

14              MR. DUPUIS:  No.

15              THE COURT:  The crime was never solved?

16              MR. DUPUIS:  Right.

17              THE COURT:  You had contact with law enforcement

18    officers?

19              MR. DUPUIS:  Personal contact, yes.

10:56 20         THE COURT:  Would that experience, as indirect as it

21    was, with the criminal justice system in any way affect your

22    ability to be fair and impartial in this case which involves

23    allegations of criminal conduct?

24              MR. DUPUIS:  I don't believe it would.

25              THE COURT:  Mr. Goldstein?
```

1          MR. GOLDSTEIN:  Nothing.

2          THE COURT:  Miss Kaplan?

3          MS. KAPLAN:  No.

4          THE COURT:  You also mentioned, Mr. Dupuis, that you

5    or a member of your family knows a police officer.  Would you

6    tell me about that?

7          MR. DUPUIS:  Three.  My father's lifelong friend was

8    the chief of police for Pawtucket, Rhode Island.  He's since

9    retired.  My first supervisor was a gentleman named Dennis

10:57 10   McEllis, who later became a police officer in the city of

11   Central Falls.  He's passed away about two, three year ago,

12   Bobby Sasso, who was the chief of police in Central Falls.  My

13   daughter, who hung around with a Richard Goule (ph), is the

14   former chief of Attleboro.

15         THE COURT:  Would those relationships with these

16   police officers in any way affect your ability to be fair and

17   impartial in this case which is going to involve the testimony

18   of other law enforcement officers?

19         MR. DUPUIS:  I don't believe it would.

10:58 20   THE COURT:  Okay.  In other words, if a police officer

21   said that "A" happened and a non-police officer, a layperson,

22   said, No, no, no, it was "B" that happened, would you believe

23   the police officer just because he or she was a police officer?

24         MR. DUPUIS:  No.

25         THE COURT:  Any questions, Mr. Goldstein?

```
 1              MR. GOLDSTEIN:  No, your Honor.

 2              THE COURT:  Miss Kaplan?

 3              MS. KAPLAN:  No, your Honor.

 4              THE COURT:  I believe those were the only questions

 5      you answered affirmatively, Mr. Dupuis, is that correct?

 6              MR. DUPUIS:  Yes.

 7              THE COURT:  Please have a seat in the jury, sir.

 8      Thank you, sir.

 9              I have no affirmative responses from Miss Conlon, so

10:58 10     I'm going to skip her.

11              Miss Henwood, please.  Good morning, Miss Henwood.

12      You mentioned --

13              MS. CONLON:  Conlon.

14              THE COURT:  I'm sorry, Miss Conlon.  I didn't mean to

15      call you.  Thank you.  Have a seat in the jury.

16              Miss Henwood, please.  Good morning, Miss Henwood.

17      You mentioned that you might have a scheduling problem.

18              MS. HENWOOD:  I'm getting married on Sunday.

19              THE COURT:  Congratulations.

10:59 20     MS. HENWOOD:  I'm leaving on the 5th.

21              THE COURT:  So Sunday is the day?

22              MS. HENWOOD:  Is the day.  If he shows up.

23              THE COURT:  I think this might conflict with your

24      duties.  But I hope you'll serve on a different time.

25              MS. HENWOOD:  Absolutely.
```

1          THE COURT:  Tell the people down in the jury room when

2     a less inconvenient time for you is.  Congratulations to you.

3     Have a good honeymoon.

4          MS. HENWOOD:  I will, thanks.

5          THE COURT:  Mr. Manning, please.  Good morning, Mr.

6     Manning.  You mentioned that you or a member of your family

7     knows a police officer.  Would you tell me about that?

8          MR. MANNING:  My brother-in-law is the police chief in

9     the town of Berlin, in Berlin, Mass.

11:00 10          THE COURT:  How long has he been chief?

11          MR. MANNING:  Ten years.

12          THE COURT:  Any other relatives involved in law

13     enforcement?

14          MR. MANNING:  I had my -- deceased now, but I had a

15     brother that was a police officer.

16          THE COURT:  Where was he a police officer?

17          MR. MANNING:  He was in the town of Framingham,

18     Sherborn, and he passed away.  He was at UMass. Medical Center.

19          THE COURT:  Would those close relationships with

11:00 20     police officers in any way affect your ability to be fair and

21     impartial in this case which is going to involve the testimony

22     of law enforcement officers?

23          MR. MANNING:  Not at all.

24          THE COURT:  Mr. Goldstein?

25          MR. GOLDSTEIN:  Nothing.

1         THE COURT:  Miss Kaplan?

2         MS. KAPLAN:  No.

3         THE COURT:  You mentioned, also, Mr. Manning, that you

4    or a member of your family had been involved in a civil or a

5    criminal case as a party, a witness or a juror.

6         MR. MANNING:  I was a juror in superior court in

7    Brockton last May.

8         THE COURT:  What kind of a case?

9         MR. MANNING:  Rape case.

11:01 10         THE COURT:  How did it come out?

11        MR. MANNING:  He was found not guilty.  I was the

12   foreman actually.

13        THE COURT:  You were the foreperson.  Would that

14   experience with the criminal justice system in any way affect

15   your ability to be fair and impartial in this case which

16   involves allegations of different kinds of criminal conduct?

17        MR. MANNING:  No, it would not.

18        THE COURT:  Mr. Goldstein?

19        MR. GOLDSTEIN:  No.

11:01 20         MS. KAPLAN:  No.

21        THE COURT:  I believe those are the only two questions

22   you answered affirmatively, Mr. Manning, is that right?

23        MR. MANNING:  That's right.

24        THE COURT:  Please have a seat in the jury, sir.

25   Thank you.

1          MR. MANNING:  Thank you.

2          THE COURT:  Mr. Curcuru, please.

3          THE COURT OFFICER:  Just come to my attention, your

4   Honor, that there was an article in the *Globe* today.  There's

5   two or three people reading the *Globe*.  Would you like me to

6   confiscate?

7          THE COURT:  They shouldn't be reading anything,

8   whether it's an article or not.  I think you'd better ask them

9   to put the newspapers away.

11:01 10          Mr. Curcuru.  I'll try to get that right.  You

11   mentioned that you or a member of your family knows a police

12   officer.  Would you tell me about that?

13          MR. CURCURU:  I have two brother-in-laws.  One was a

14   former, just retired, Gloucester detective, and one was just a

15   patrolman in Rockport, Massachusetts.

16          THE COURT:  Would those relationships in any way

17   affect your ability to be fair and impartial in this case which

18   is going to involve the testimony of law enforcement officers?

19          MR. CURCURU:  No.

11:02 20          THE COURT:  Any questions, Mr. Goldstein?

21          MR. GOLDSTEIN:  No, your Honor.

22          MS. KAPLAN:  No, your Honor.

23          THE COURT:  Mr. Curcuru, I think that was the only

24   question you answered affirmatively, is that right?

25          MR. CURCURU:  Yes.

1          THE COURT:  Please have a seat on the jury, sir.

2    Thank you.

3          Mr. Jendro, please.  You mentioned, sir, that you or a

4    member of your family had been the victim of a crime.  Would

5    you tell me about that?

6          MR. JENDRO:  It was several instances.  My father had

7    his car stolen.

8          THE COURT:  How long ago was that?

9          MR. JENDRO:  That was a while ago.  My aunt was a

11:03 10   victim of rape.  My sister was a victim of identity theft.  And

11   I actually had some things stolen out of my car right in front

12   of me.

13         THE COURT:  Would any of those cases -- did they

14   involve prosecution?

15         MR. JENDRO:  No.

16         THE COURT:  The rape case, they never apprehended

17   anybody?

18         MR. JENDRO:  Never apprehended anyone.

19         THE COURT:  In none of the cases were you involved in

11:03 20   any -- in any case that came up afterwards?

21         MR. JENDRO:  No.

22         THE COURT:  Any prosecution?

23         Would that effect of being impacted by crime in any

24   way affect your ability to be fair and impartial in this case

25   which involves allegations of criminal conduct?

1          MR. JENDRO:  Considering that this is related to

2     drugs, potentially related to drugs, my uncle was addicted to

3     crack cocaine, and I've seen firsthand the devastation that

4     that brings on families.  It would be tough for me to distance

5     myself from that.

6          THE COURT:  Well, the point, Mr. Jendro, is can you

7     start off with no bias in this case?  In other words, can you

8     decide this case solely on the basis of the evidence that comes

9     into this courtroom and not on the basis of anything that might

11:04 10    have been in your mind before the charges?  Of course, they are

11    just that; they're just charges.  Nothing has been proven up to

12    this point.  Can you keep an open mind and decide this case

13    solely on the basis of the evidence that comes into this

14    courtroom and not on the basis of any feeling that you have

15    about drugs or any other crime?

16          MR. JENDRO:  I can do my best.

17          THE COURT:  Well, we can't get inside your head.  If

18    you don't think you can, then I'm not going to ask you to serve

19    on this jury.  If you have a problem with being neutral, fair

11:05 20    and impartial, then I will excuse you from this jury.

21          MR. JENDRO:  It's very difficult for me.  I want to do

22    my duty, but I don't think I can distance myself from that.

23          THE COURT:  I'm going to excuse you from this jury.

24    Thank you, Mr. Jendro.  You can go back to the jury room.  You

25    may get assigned on a different case, but thank you, sir.

1          MR. JENDRO:  Thank you.

2          THE COURT:  We have three vacancies.  We're going to

3     do that.  You can stay here while we do it, or you can go back

4     to counsel table, whichever you prefer.

5     .  .  .  END OF SIDEBAR CONFERENCE.)

6          THE CLERK:  Filling Seat No. 8, which is the first

7     seat in the second row, Juror No. 35, Carla McCarthy.

8          THE COURT:  There's only one Carla McCarthy.  Excuse

9     me, ma'am.  You must have misheard the name.

11:06 10          A JUROR:  I thought you said Juror No. 8.

11          THE COURT:  Filling Seat No. 8.  Miss McCarthy, we

12     need you over here in the first seat.

13          THE CLERK:  You can come around here if you prefer.

14          Filling Seat No. 11 in the second row is Juror No. 1,

15     Robert Leonard.  Filling Seat No. 14 in the second row is Juror

16     No. 32, Gayle Marshall.

17          THE COURT:  Miss McCarthy, please, will you come to

18     sidebar.

19     (SIDEBAR CONFERENCE AS FOLLOWS:

11:08 20          THE COURT:  Good morning, Miss McCarthy.  You

21     mentioned that you might have a scheduling problem in this

22     case.  Would you tell me about that?

23          MS. McCARTHY:  I have an elderly mom that lives by

24     herself, so I have to really be there for her on a daily basis.

25          THE COURT:  Where does she live?

 1          MS. McCARTHY:  In the same town as me, Methuen.

 2          THE COURT:  Do you have any siblings or anyone else

 3   that helps you take care of her?

 4          MS. McCARTHY:  We do try to rotate.

 5          THE COURT:  So who's taking care of her today, for

 6   instance?

 7          MS. McCARTHY:  Well, my brother.

 8          THE COURT:  Could he be the helper for this next week

 9   or so?  This is not going to be a real long trial.  It will

11:08 10   last this week and next week but not after that.  It goes -- we

11   will go generally till 3 or 3:30 in the afternoon.

12          MS. McCARTHY:  I suppose he could.  I mean, we do

13   rotate.

14          THE COURT:  Are you employed outside the home?

15          MS. McCARTHY:  Yes, I am.

16          THE COURT:  Where are you employed?

17          MS. McCARTHY:  Internal Revenue in Andover, but I am

18   in Methuen, located in that site.

19          THE COURT:  What's your normal work hours?  9 to 5?

11:09 20          MS. McCARTHY:  7:30 to 4.

21          THE COURT:  Well, we won't go that long.  You'll have

22   a shorter day than you normally do.  And so I would ask you to

23   do your civic duty, which is a very important duty to do, okay?

24   Can you do that for me?

25          MS. McCARTHY:  I'll try.

1          THE COURT:  Okay.  That's all we can ask of you, Miss

2     McCarthy.

3          You also mentioned that you or a member of your family

4     knows a police officer.  Would you tell me about that?

5          MS. McCARTHY:  Yeah.  I know several in Methuen,

6     Lawrence, Haverhill.

7          THE COURT:  By "know," are they good personal friends

8     or just acquaintances?

9          MS. McCARTHY:  Some are like extended family.

11:10 10          THE COURT:  Do you see them regularly and talk about

11     what they do for a living and what they do as police officers?

12          MS. McCARTHY:  From time to time.

13          THE COURT:  Would that in any way affect your ability

14     to be fair and impartial in this case which is going to involve

15     the testimony of law enforcement officers?

16          MS. McCARTHY:  I don't think so.

17          THE COURT:  Okay.  In other words, if a police officer

18     said that "A" happened and a lay witness said, No, it was "B"

19     that happened, would you automatically believe the police

11:10 20     officer because he or she was a police officer?

21          MS. McCARTHY:  No.

22          THE COURT:  Mr. Goldstein?

23          MR. GOLDSTEIN:  Nothing, your Honor.

24          THE COURT:  Ms. Kaplan?

25          MS. KAPLAN:  No, your Honor.

1          THE COURT:  You also mentioned, Miss McCarthy, that

2   you or a member of your family was employed by the U.S.

3   Attorney's Office, the District Attorney's Office, the Internal

4   Revenue Service or the Boston Police Department.  I take it the

5   IRS is you.

6          MS. McCARTHY:  That is correct.

7          THE COURT:  How long have you been employed?

8          MS. McCARTHY:  Twenty-five years.

9          THE COURT:  What do you do for them?

11:10 10          MS. McCARTHY:  Tax examiner.

11          THE COURT:  What town again?

12          MS. McCARTHY:  For the Andover service center.

13          THE COURT:  Okay.  Would the fact that you work for

14   the Internal Revenue Service in any way affect your ability to

15   be fair and impartial in this case which is going to involve

16   testimony about government agencies?

17          MS. McCARTHY:  That I may be a little unpartial (sic).

18          THE COURT:  I'm sorry?

19          MS. McCARTHY:  I may be a little unpartial (sic).  I

11:11 20   wouldn't know how to decide.

21          THE COURT:  Well, the question is:  Can you decide

22   this case solely on the basis of the evidence that comes into

23   this courtroom and not on the basis of any preconceived notions

24   you have about people that don't pay their taxes, for instance?

25          MS. McCARTHY:  Okay.  I guess not.

1          THE COURT:  You wouldn't have a problem?

2          MS. McCARTHY:  I haven't got a problem.

3          THE COURT:  Any questions, Mr. Goldstein?

4          MR. GOLDSTEIN:  No.

5          THE COURT:  Or Miss Kaplan?

6          MS. KAPLAN:  No, your Honor.

7          THE COURT:  Also, Miss McCarthy, you mentioned that

8    you or a member of your family had been involved in a civil or

9    criminal case as a party, a witness or a juror.

11:11 10          MS. McCARTHY:  I was a witness in a family case that

11   was held in Brentwood, New Hampshire.  I was -- it was for my

12   sister and my niece.  It was a custody battle.  And it ended up

13   that the people that my sister had signed custody to ended up

14   winning the case.  And she also has, you know, bipolar.

15          THE COURT:  So you were a witness in that case?

16          MS. McCARTHY:  I was a witness.  My husband was a

17   witness as well.

18          THE COURT:  Would that involvement in that civil case

19   in any way affect your ability to be fair and impartial in this

11:12 20   case which involves allegations of criminal conduct?

21          MS. McCARTHY:  No.

22          THE COURT:  Mr. Goldstein?

23          MR. GOLDSTEIN:  Nothing.

24          THE COURT:  Miss Kaplan?

25          MS. KAPLAN:  No, your Honor.

1          THE COURT:  Thank you.  I believe those are the only

2    questions you answered affirmatively, Miss McCarthy.  Have a

3    seat in the jury, ma'am.  Thank you.

4          I have no affirmative responses for Mr. Leonard, so we

5    will go to -- Miss Marshall, please, will you come to sidebar.

6          Good morning, Miss Marshall.  You mentioned that you

7    might have a scheduling problem.  Would you tell me about that?

8          MS. MARSHALL:  Friday, June 8th, I'm going to be in

9    Canada.  I just want to add I know Mr. Reddington from the town

11:13 10   of Easton, and I've seen --

11          THE COURT:  We're going to get to that.  I want to ask

12   you first about the scheduling.  Why do you have to be in

13   Canada?

14          MS. MARSHALL:  There's a wedding.

15          THE COURT:  Okay.

16          MS. MARSHALL:  So we're driving up on that Friday.

17          THE COURT:  You have preplans to do that?

18          MS. MARSHALL:  Right.

19          THE COURT:  I'm not going to interfere with that.  I

11:13 20   take it that's important to you, is that right?

21          MS. MARSHALL:  Uh-huh.

22          THE COURT:  This case will probably be still going a

23   week from Friday.  You're excused from this jury.  If you'll go

24   back to the jury lounge, they may assign you to a different

25   case.  But you're excused from this case.  Thank you.

 1          All right, counsel.  We will fill that last seat.  You

 2    can stay right there if you'd like to.

 3    .  .  .  END OF SIDEBAR CONFERENCE.)

 4          THE CLERK:  Filling Seat No. 14, Juror No. 33, Esther

 5    Mackenzie.

 6          THE COURT:  Miss Mackenzie, if you'll just come to

 7    sidebar, please.

 8    (SIDEBAR CONFERENCE AS FOLLOWS:

 9          THE COURT:  Good morning, Miss Mackenzie.  You

11:14 10    mentioned that you or a member of your family knows a police

 11    officer.  Would you tell me about that?

 12          MS. MACKENZIE:  You mentioned military.  My

 13    father-in-law was in the Coast Guard.

 14          THE COURT:  How long was he in the military?

 15          MS. MACKENZIE:  Twenty years.

 16          THE COURT:  Was he in law enforcement in the military

 17    or just in the military?

 18          MS. MACKENZIE:  In the military.

 19          THE COURT:  So that's a little indirect.  But would

11:14 20    the fact that he was in the military in any way affect your

 21    ability to be fair and impartial in this case?

 22          MS. MACKENZIE:  No.

 23          THE COURT:  Any questions?

 24          MR. GOLDSTEIN:  No, your Honor.

 25          MS. KAPLAN:  No, your Honor.

1          THE COURT:  Also, Miss MacKenzie, you mentioned that

2    you or a member of your family had been involved in a civil or

3    criminal case as a witness, a party or a juror.  Would you tell

4    me about that?

5          MS. MACKENZIE:  Sure.  In 2008, I was driving on the

6    road in Cambridge, and a bicyclist swerved in front of me, and

7    then he picked up his bike, and he threw it at my car.

8          THE COURT:  So what happened?

9          MS. MACKENZIE:  We went to court for the damages for

11:15 10   the --

11         THE COURT:  How did it come out?

12         MS. MACKENZIE:  In my favor.

13         THE COURT:  In your favor?

14         MS. MACKENZIE:  Yes.

15         THE COURT:  Would that involvement with the civil

16   justice system in any way affect your ability to be fair and

17   impartial in this case?

18         MS. MACKENZIE:  No.

19         THE COURT:  Mr. Goldstein?

11:15 20   MR. GOLDSTEIN:  No.

21         MS. KAPLAN:  No.

22         THE COURT:  Finally, you mentioned that you or a

23   member of your family had been the victim of a crime.  Would

24   you tell me about that?

25         MS. MACKENZIE:  My car was broken into when I was,

like, 17.

THE COURT:  Did anybody ever get apprehended as a result of that?

MS. MACKENZIE:  Yeah.

THE COURT:  Did you go to court?

MS. MACKENZIE:  Yes.

THE COURT:  And testified?

MS. MACKENZIE:  I did.

THE COURT:  Was the person convicted?

MS. MACKENZIE:  Yes.

THE COURT:  Would that involvement with the criminal justice system in any way affect your ability to be fair and impartial in this case?

MS. MACKENZIE:  No.

THE COURT:  Any questions?

MR. GOLDSTEIN:  No.

MS. KAPLAN:  No.

THE COURT:  Thank you, Miss Mackenzie.  Have a seat in the jury.

Counsel, now I get to Phase II.  I ask each of the 14 members what they do for a living and, if they're married, what their spouse does.  Then we proceed to sidebar for peremptory challenges.

. . .  END OF SIDEBAR CONFERENCE.)

THE COURT:  All right, ladies and gentlemen of the

1    jury.  At this state, I like to ask each of you what you do for

2    a living and, if you're married, what your spouse does.  I know

3    you were asked those questions in writing, but sometimes the

4    answers come back and they're very sparse.  So we'd like you to

5    just embellish a little bit on what you do for a living and, if

6    you're married, what your spouse does.  And I'd ask Miss

7    Felzani to tell us briefly what you do for a living, ma'am.

8              MS. FELZANI:  I'm nurse a practitioner.

9              THE COURT:  Whereabouts?

11:17 10             MS. FELZANI:  I work at Vanguard in Wellesley.

11             THE COURT:  Are you married, ma'am?

12             MS. FELZANI:  I am.

13             THE COURT:  And your spouse?

14             MS. FELZANI:  Middle school teacher in Chelmsford.

15             THE COURT:  Thank you.  Miss Bradley, would you tell

16   us what you do for living, ma'am?

17             MS. BRADLEY:  Stay-at-home mom.

18             THE COURT:  Were you employed, before you were a

19   stay-at-home mom, out of the home?

11:17 20             MS. BRADLEY:  Yes.  I was employed for Bank of America

21   at that time.

22             THE COURT:  What did you do for them?

23             MS. BRADLEY:  Internal audit risk and compliance

24   management.

25             THE COURT:  Are you married, ma'am?

```
 1              MS. BRADLEY:  Yes.

 2              THE COURT:  And your spouse?

 3              MS. BRADLEY:  International audit partner with

 4    Citizens.

 5              THE COURT:  Citizens Bank.  Thank you, Miss Bradley.

 6              Miss Vasquez, would you tell us what you do for a

 7    living, ma'am?

 8              MS. VASQUEZ:  I'm a catering manager at Draper

 9    Laboratory in Cambridge, Mass.

11:17 10          THE COURT:  Are you married, ma'am?

11              MS. VASQUEZ:  Yes, I am.

12              THE COURT:  And your spouse?

13              MS. VASQUEZ:  He works at Tufts Health Plan as a chef.

14              THE COURT:  Thank you, Miss Vasquez.  Mr. McCabe.

15              MR. McCABE:  I'm a student at Saint Anselm's in

16    Manchester, New Hampshire.

17              THE COURT:  Are you going into your senior year?

18              MR. McCABE:  Yes.

19              THE COURT:  Are you married?

11:18 20          MR. McCABE:  No.

21              THE COURT:  Thank you, Mr. McCabe.  Miss Nelson.

22              MS. NELSON:  Nursing supervisor at Cape Cod Hospital.

23              THE COURT:  I'm sorry?

24              MS. NELSON:  Nursing supervisor at Cape Cod Hospital.

25              THE COURT:  And are you married, ma'am?
```

```
 1              MS. NELSON:  No, widow.

 2              THE COURT:  Thank you, Miss Nelson.  Miss Leifer or is

 3    it Leifer?

 4              MS. LEIFER:  Leifer.

 5              THE COURT:  Would you tell us what you do for a

 6    living, ma'am?

 7              MS. LEIFER:  I stay at home.

 8              THE COURT:  Were you employed outside the home before

 9    you did that?

11:18 10         MS. LEIFER:  At a nursery school.

11              THE COURT:  All right.  Are you married, ma'am?

12              MS. LEIFER:  Yes.

13              THE COURT:  And your spouse?

14              MS. LEIFER:  He works in finance.

15              THE COURT:  What sort of finance?

16              MS. LEIFER:  He was a fund manager at Fidelity and

17    then vice president at a local college and does pro bono work

18    now.

19              THE COURT:  Okay.  Thank you, Miss Leifer.

11:18 20         Miss Goralski, is that how you pronounce it?

21              MS. GORALSKI:  I'm a receptionist for an orthodontist

22    office in Lexington.  My husband is an engineer.

23              THE COURT:  Whereabouts is he an engineer?

24              MS. GORALSKI:  In Cambridge.

25              THE COURT:  Thank you, Miss Goralski.
```

1          Miss McCarthy, would you tell us what you do for a

2     living, ma'am?

3          MS. McCARTHY:  Yes.  I'm a tax examiner for the

4     Internal Revenue Service.

5          THE COURT:  Are you married, ma'am?

6          MS. McCARTHY:  Yes, I am.

7          THE COURT:  And your spouse?

8          MS. McCARTHY:  My spouse is an engineering assistant

9     for Vicor Corp.

11:19 10        THE COURT:  Whereabouts is that located?

11          MS. McCARTHY:  Andover, Mass., as well.

12          THE COURT:  Thank you, Miss McCarthy.  Mr. Dupuis.

13          MR. DUPUIS:  Quality engineer for Abnote.  My wife is

14     at Biocin Technologies (ph).

15          THE COURT:  Where are they located?

16          MR. DUPUIS:  In Attleboro.

17          THE COURT:  Thank you, Mr. Dupuis.  Miss Conlon.

18          MS. CONLON:  I'm an environmental chemist.

19          THE COURT:  Whereabouts?

11:19 20        MS. CONLON:  In Braintree.  My husband is an

21     environmental affairs officer in Stoughton.

22          THE COURT:  In the town of Stoughton?

23          MS. CONLON:  Yes.

24          THE COURT:  Thank you, Miss Conlon.

25          Mr. Leonard, would you tell us what you do for a

1    living, sir?

2         MR. LEONARD:  I'm a banquet server at the Hawthorne

3    Hotel in Salem.

4         THE COURT:  Are you married, sir?

5         MR. LEONARD:  Yes, sir.

6         THE COURT:  And your spouse?

7         MR. LEONARD:  She can't work.  She stays at home.

8         THE COURT:  All right.  Mr. Manning, would you tell us

9    what you do?

11:20 10        MR. MANNING:  I'm retired.

11        THE COURT:  From what?

12        MR. MANNING:  Human resource labor relations manager.

13        THE COURT:  Whereabouts?

14        MR. MANNING:  For Raytheon.

15        THE COURT:  Are you married, sir?

16        MR. MANNING:  Yes, I am.  My wife is an elementary

17   school teacher.

18        THE COURT:  Thank you, Mr. Manning.  Mr. Curcuru.

19        MR. CURCURU:  Letter carrier for the postal service in

11:20 20   Gloucester.

21        THE COURT:  Are you married, sir?

22        MR. CURCURU:  Yes.  My wife is the administrative

23   assistant for the Hamilton Wenham High School.

24        THE COURT:  Thank you, Mr. Curcuru.  And, finally, Ms.

25   MacKenzie.

```
 1           MS. MACKENZIE:  I'm a registered nurse for Lincoln

 2    Health Center.  My husband is an engineer for Waltham

 3    Engineering in Exeter.

 4           THE COURT:  Thank you, Miss Mackenzie.  I'll see

 5    counsel at sidebar.

 6    (SIDEBAR CONFERENCE AS FOLLOWS:

 7           THE COURT:  All right, counsel.  In the first round,

 8    the government goes first.  If they have one peremptory,

 9    they'll exercise it, and then we go to the defendants.  If they

11:21 10    have one or two, they'll exercise those and then back and

11    forth.  Miss Kaplan.

12           MS. KAPLAN:  Juror No. 31, which is in Seat 4.

13           THE COURT:  31 in Seat 4.  That would be Mr. McCabe,

14    is that correct?

15           MS. KAPLAN:  Yes, your Honor.

16           THE COURT:  Okay.  The defendants, Mr. Goldstein?

17           MR. GOLDSTEIN:  Juror 16, Seat 5.

18           THE COURT:  16 in Seat 5 would be Miss Nelson.  Any

19    others at this time?

11:22 20           MR. GOLDSTEIN:  Yes, Seat 8, Miss McCarthy.

21           THE COURT:  So that would be No. 35 in Seat 8; is that

22    right, Mr. Goldstein?

23           MR. GOLDSTEIN:  Yes.

24           THE COURT:  Miss McCarthy?

25           MR. GOLDSTEIN:  Yes.
```

1          THE COURT:  Back to the government.

2          MS. KAPLAN:  Juror No. 45 in Seat 6, Miss Leifer.

3          THE COURT:  That would be Miss Leifer.

4          MS. KAPLAN:  Leifer.

5          THE COURT:  35 in Seat 6.  We'll go back to Mr.

6     Goldstein.

7          MR. GOLDSTEIN:  Seat 11, Mr. Leonard.

8          THE COURT:  That would be No. 1 in Seat 11, Mr.

9     Leonard, is that right?

11:23 10        MR. GOLDSTEIN:  Yes.

11         THE COURT:  And then any others at this point?

12         MR. GOLDSTEIN:  Seat 14, No. 33, Mackenzie.

13         THE COURT:  That would be Miss Mackenzie in Seat 14,

14    is that right?

15         MS. KAPLAN:  Yes.

16         THE COURT:  Okay.  Back to the government.

17         MS. KAPLAN:  Juror No. 2, Seat 12, Mr. Manning.

18         THE COURT:  In Seat 12, is that correct?

19         MS. KAPLAN:  Yes, your Honor.

11:23 20        THE COURT:  Back to the defendants.

21         MR. GOLDSTEIN:  May we have one moment, your Honor?

22         THE COURT:  Yes, you may.

23    (Pause in proceedings.)

24         THE COURT:  Yes, Mr. Goldstein.

25         MR. GOLDSTEIN:  We're content.

1          THE COURT:  Okay.  The government?

2          MS. KAPLAN:  We are too, your Honor.

3          THE COURT:  Then let me just go back over this.  I

4    understand that those in Seats 4, 5, 6, 8, 11, 12, and 14 have

5    been stricken, am I correct?

6          MS. KAPLAN:  Yes.

7          MR. GOLDSTEIN:  Yes, your Honor.

8          THE COURT:  You understand that none of the remaining

9    seven can be stricken after this part?  Okay.  So 4, 5, 6, 8,

11:24 10   11, 12, and 14.  All right, counsel.  You can return to counsel

11   table.  We'll fill the box again.

12   .  .  .  END OF SIDEBAR CONFERENCE.)

13         THE CLERK:  The following jurors are excused and may

14   return to the second floor where you checked in this morning:

15   Zachary McCabe, Nancy Nelson, Carla McCarthy, Marcia Leifer,

16   Robert Leonard, David Manning, and Esther Mackenzie.

17         Filling Seat No. 4 in the first row, Juror No. 34,

18   Grace Gorman.  Filling Seat No. 5, Juror No. 58, Michelle

19   Zakrzewski.  Filling Seat No. 6, Juror No. 36, Holly Reed.

11:26 20  Filling Seat No. 8, which is in the second row, Juror No. 46,

21   Robert Franke.  Filling Seat No. 11, Juror No. 47, James

22   Hayden, Jr.  Filling Seat No. 12, Juror No. 40, Kevin Buckley.

23   And filling Seat No. 14, Juror No. 24, Joseph Maiellano.

24   (SIDEBAR CONFERENCE AS FOLLOWS:

25         THE COURT:  I have no affirmative responses for Miss

1    Gorman, so we're going to go to the next one, which is -- I'll

2    try it here.  Miss Zakrzewski, please, would she come to

3    sidebar.

4           Good morning, Miss Zakrzewski.  You mentioned that you

5    or a member of your family knows a police officer.

6           MS. ZAKRZEWSKI:  My grandfather, Stanley Jacobs, was a

7    retired police officer for the Town of Needham.  Alvatine

8    Abalouski (ph) is also a retired police officer for the Town of

9    Norwood.  And my neighbor, Richard A. Praga (ph), of Hudson is

11:29 10   the chief of police.

11          THE COURT:  In Hudson.  Would any of those

12   acquaintances in any way affect your ability to be fair and

13   impartial in this case which is going to involve the testimony

14   of law enforcement officers?

15          MS. ZAKRZEWSKI:  Not because I'm related to them but

16   for other reasons:  because I've been a victim of a crime that

17   really affected me.  Sorry.

18          THE COURT:  Well, that's all right.  Take your time.

19          MS. ZAKRZEWSKI:  When I was little, I was a victim of

11:30 20   a home invasion, and it's been very traumatic.  I've had

21   flashbacks all morning.

22          THE COURT:  You get flashbacks from this crime?  I'm

23   not sure how you relate that to this case.  I am -- this is

24   going to involve a case involving allegations of completely

25   different sorts of crimes:  money laundering.  It's not home

1    invasion.  Is that going to have the same impact on you?

2            MS. ZAKRZEWSKI:  It's just being here, I think, that's

3    doing it.  I'm sorry.

4            THE COURT:  Just being in the court?  Are you

5    employed?

6            MS. ZAKRZEWSKI:  I substitute teach for the Nashoba

7    Regional School District.

8            THE COURT:  Currently?

9            MS. ZAKRZEWSKI:  Currently, yes.

11:30 10        THE COURT:  And you've never been in court before?

11           MS. ZAKRZEWSKI:  No.  I was too little to go into the

12   court for the home invasion.  My parents went in for me.

13           THE COURT:  But you feel that it would be traumatic

14   for you to serve as a juror in a case such as this because of

15   your experience as a little girl?

16           MS. ZAKRZEWSKI:  (Nodding.)

17           THE COURT:  Well, okay.

18           MS. ZAKRZEWSKI:  I can do my best.

19           THE COURT:  You're telling me that you don't think you

11:31 20   can serve because of that incident, and I take you at your

21   word.  And I will allow you to be excused from this trial.

22           MR. ZAKRZEWSKI:  I'm sorry.

23           THE COURT:  Okay.  You're excused.

24           Miss Reed, please.  Good morning, Miss Reed.  You

25   mentioned that you might have a scheduling problem.  Would you

1    tell me about that?

2          MS. REED:  I have two kids at home.  They're both sick

3    with the coxsackie virus, the hand, foot and mouth.  They are

4    sick and I'm sick.  And my husband goes to school and works

5    part time trying to -- he got laid off from his job.  I'm

6    basically a single parent.

7          THE COURT:  I'm going to excuse you from this jury.

8    Will you tell them down in the jury lounge when a less

9    inconvenient time would be, three months or six months?  It is

11:32 10   a very important civic responsibility.  I understand this is

11   not the time for you, but there will be another time when you

12   can do your civic duty, and I hope that you'll to it, okay?

13   You're excused from this case.

14         MS. REED:  Okay.

15         THE COURT:  Mr. Franke, please.  Would you come to

16   sidebar.  Good morning, Mr. Franke.  There is some confusion as

17   to whether you answered a question about a police officer or

18   not.  Do you know a police officer?

19         MR. FRANKE:  Yes.

11:33 20        THE COURT:  Would you tell me about that?

21         MR. FRANKE:  John has been a family friend for 40-odd

22   years.

23         THE COURT:  Where is he a police officer?

24         MR. FRANKE:  Boston.

25         THE COURT:  Do you know what he does particularly?

1          MR. FRANKE:  I don't know which unit he's in now.  As

2    a matter of fact, I think he's about ready to retire in

3    October.  He also has three sons that are also police officers

4    also in Boston.  I don't know where.

5          THE COURT:  You don't know them but --

6          MR. FRANKE:  I know them also.

7          THE COURT:  Would the fact that you know these police

8    officers and are good friends with them in any way affect your

9    ability to be fair and impartial in this case which is going to

11:34 10   involve the testimony of other law enforcement officers?

11         MR. FRANKE:  I don't believe so, no.

12         THE COURT:  Mr. Goldstein?

13         MR. GOLDSTEIN:  Nothing.

14         THE COURT:  Miss Kaplan?

15         MS. KAPLAN:  Nothing, your Honor.

16         THE COURT:  Now, you also mentioned, Mr. Franke, that

17   you or a member of your family had been involved in a civil or

18   a criminal case as a witness, a party or a juror.  Would you

19   tell me about that?

11:34 20        MR. FRANKE:  I was a juror about 20, maybe 30 years

21   ago.  It was a murder trial.

22         THE COURT:  Do you remember where it was?

23         MR. FRANKE:  Hold on a sec.  I think it was in Dedham.

24   The murder was someplace in Norfolk County.  I honestly don't

25   remember.

1          THE COURT:  Do you remember how the case came out?

2          MR. FRANKE:  We found the defendant guilty.

3          THE COURT:  Would that involvement, as long ago as it

4    was, with the criminality justice system in any way affect your

5    ability to be fair and impartial in this case?

6          MR. FRANKE:  It should not, no.

7          THE COURT:  Mr. Goldstein?

8          MR. GOLDSTEIN:  No.

9          THE COURT:  Miss Kaplan?

11:34 10          MS. KAPLAN:  Nothing.

11          THE COURT:  Mr. Franke, I believe those were the only

12    questions you answered affirmatively.  Please have a seat in

13    the jury, sir.  Thank you.

14          I have no affirmative responses from Mr. Hayden, so we

15    will go to Mr. Buckley, please.

16          Good morning, Mr. Buckley.  You mentioned that you or

17    a member of your family knows a police officer.  Would you tell

18    me about that?

19          MR. BUCKLEY:  My daughter is a detective, P.D.  My

11:35 20    son-in-law is a patrol officer in Shrewsbury, Mass.  My nephew

21    is currently on loan to the district attorney from Haverhill

22    P.D.

23          THE COURT:  Would those relationships with law

24    enforcement officers affect your ability to be fair and

25    impartial in this case which is going to involve the testimony

1    of law enforcement officers?

2              MR. BUCKLEY:  No, sir.

3              THE COURT:  Now, if a policeman said "A" happened and

4    a non -- a lay witness said, No, no, it was "B" that happened,

5    would you believe the police officer just because he or she was

6    a police officer?

7              MR. BUCKLEY:  I would be partial to the testimony,

8    your Honor.

9              THE COURT:  You think you would give more weight to

11:36 10   the police officer just simply because he or she was one?

11             MR. BUCKLEY:  They put their reputation before the

12   court, you know.  I would trust their judgment, sir.

13             THE COURT:  So you don't think you could be fair and

14   impartial in that situation?

15             MR. BUCKLEY:  I'd try, your Honor.

16             THE COURT:  Well, I understand.  We can't get inside

17   your head.  Only you can tell us.  The crucial question is

18   whether you would believe a police officer over a non-police

19   officer just because he or she was a police officer.

11:36 20             MR. BUCKLEY:  No, your Honor.

21             THE COURT:  Well, okay.  Mr. Goldstein, any questions?

22             MR. GOLDSTEIN:  Nothing.

23             THE COURT:  Miss Kaplan?

24             MS. KAPLAN:  No, your Honor.

25             THE COURT:  Let me just be sure I understand, Mr.

1      Buckley.

2              MR. BUCKLEY:  Yes, sir.

3              THE COURT:  That you can decide this case solely on

4      the basis of the evidence that comes into this courtroom and

5      not on the basis of any prior knowledge or understanding about

6      police officers, what they do or what they don't do, that you

7      could judge somebody on the basis of their testimony here and

8      on the basis of the testimony that they give both on direct

9      examination and on cross-examination.  Can you do that?

11:37 10            MR. BUCKLEY:  I don't think I would, your Honor.  I

11     wouldn't -- I would be impartial.  I wouldn't be impartial to

12     the open testimony in this particular case if that would be the

13     case.

14             THE COURT:  You don't think you could be impartial?

15             MR. BUCKLEY:  No, sir.

16             THE COURT:  All right.  You're excused from this jury.

17     You may get called on a different one, sir, but you're excused

18     from this one.

19             Mr. Maiellano, please.  Good morning, Mr. Maiellano.

11:38 20   You mentioned that you or a member of your family knew someone

21     in one of these particular agencies:  the Boston Police

22     Department or the United States Attorney's Office.

23             MR. MAIELLANO:  Not directly related to him.  He's my

24     cousin's uncle from the other side of my family.  He's a

25     lieutenant.

1          THE COURT:  Who is "he"?

2          MR. MAIELLANO:  George Juliano (ph).

3          THE COURT:  What does he do?

4          MR. MAIELLANO:  I'm not sure.  He's a lieutenant.

5          THE COURT:  In the Boston Police Department?

6          MR. MAIELLANO:  Yes.

7          THE COURT:  Do you know him personally?

8          MR. MAIELLANO:  I do.  I only see him maybe once a

9     year, but I figured I should --

11:38 10          THE COURT:  Would the fact of that distant

11     relationship in any way affect your ability to be fair and

12     impartial in this case which is going to involve the testimony

13     of law enforcement officers?

14          MR. MAIELLANO:  I'm completely unbiased.

15          THE COURT:  Okay.  Mr. Goldstein, any questions?

16          MR. GOLDSTEIN:  Nothing.

17          MS. KAPLAN:  Nothing, your Honor.

18          THE COURT:  I believe that was the only question you

19     answered affirmatively, Mr. Maiellano, is that right?

11:38 20          MR. MAIELLANO:  Yes, sir.

21          THE COURT:  Have a seat.

22          All right.  We need to fill three seats:  5, 6, and

23     12, it seems to me.  You can stay here while we do that.

24     .  .  .  END OF SIDEBAR CONFERENCE.)

25          THE COURT:  We have -- one of the jurors wants to --

1    didn't answer a question and wants to come up, Mr. Hayden.

2         Good morning, Mr. Hayden.  You did not answer any

3    questions affirmatively, but you'd like to say something?

4         MR. HAYDEN:  I have to say this:  I didn't answer the

5    question when you asked it, but I have -- I have some bad

6    feelings about this.  What I see is -- I'm a little bit

7    disgusted by a member of the bar who allowed --

8         THE COURT:  Come in closer.  Please keep your voice

9    down.

11:40 10       MR. HAYDEN:  To some -- I'm a little disgusted by a

11   member of the bar who allowed a little hint of impropriety to

12   cloud his status as a lawyer.  I think that's going to affect

13   me.

14        THE COURT:  First of all, Mr. Hayden, nothing has been

15   proven in this court, and there's only been charges made.

16   There's been no evidence of anything.  There are charges

17   against this individual, but there is nothing more than

18   charges, and charges are not evidence.

19        MR. HAYDEN:  I understand.

11:40 20       THE COURT:  You understand that?

21        MR. HAYDEN:  Yes.

22        THE COURT:  How are you telling me that you're

23   disgusted with something?

24        MR. HAYDEN:  I've heard the charges, and the fact that

25   the charges are out there says --

1          THE COURT:  Because he's charged, he's guilty?

2          MR. HAYDEN:  No.  It's a hint of impropriety.  Not

3     guilty.

4          THE COURT:  All right.  Are you telling me that you

5     can't be impartial in this case?

6          MR. HAYDEN:  I think so.  Yes, sir.

7          THE COURT:  You're excused.

8          MR. HAYDEN:  Thank you.

9          THE COURT:  We have four seats to fill.

11:41 10     . . .  END OF SIDEBAR CONFERENCE.)

11          THE CLERK:  Filling Seat No. 5, Juror No. 25, Steven

12     Collins.  Filling Seat No. 6, Juror No. 7, Robert Lane.

13     Filling Seat No. 11, Juror No. 52, John Hunter.  And filling

14     Seat No. 12, Juror No. 37, Susan Hatch.

15          THE COURT:  Mr. Collins, please, would you come to

16     sidebar.

17     (SIDEBAR CONFERENCE AS FOLLOWS:

18          THE COURT:  Good morning, Mr. Collins.  You mentioned

19     that you had read something about this case before you came

11:43 20     here.  Would you tell me about that?

21          MR. COLLINS:  Yeah.  I vaguely ran across it in the

22     newspaper.  I don't remember many of the details.

23          THE COURT:  In what newspaper?

24          MR. COLLINS:  *Herald*.

25          THE COURT:  Today?

1          MR. COLLINS:  No.

2          THE COURT:  How long ago?

3          MR. COLLINS:  I'm going to say maybe a couple months,

4     roughly.

5          THE COURT:  Do you have any recollection of what was

6     said in the article?

7          MR. COLLINS:  Just about what you mentioned.

8          THE COURT:  What I mentioned?

9          MR. COLLINS:  Money laundering.

11:44 10          THE COURT:  That somebody has been charged with money

11     laundering?

12          MR. COLLINS:  Right.

13          THE COURT:  Would that affect your ability to be fair

14     and impartial in this case, what you've read in that newspaper?

15          MR. COLLINS:  I don't think so.

16          THE COURT:  Could you decide this case solely on the

17     basis of the evidence that comes into this courtroom and not on

18     the basis of anything you've heard outside this courtroom?

19          MR. COLLINS:  Yup.

11:44 20          THE COURT:  Any questions, Mr. Goldstein?

21          MR. GOLDSTEIN:  Nothing.

22          THE COURT:  Miss Kaplan?

23          MS. KAPLAN:  No, your Honor.

24          THE COURT:  I believe, Mr. Collins, that was the only

25     question you answered affirmatively, is that correct?

 1            MR. COLLINS:  Yes.

 2            THE COURT:  Have a seat in the jury, sir.  Thank you.

 3            Mr. Lane, please.  Good morning, Mr. Lane.  You

 4    mentioned that you had heard something about this case before

 5    you came here this morning.

 6            MR. LANE:  I read it in the paper on the way here.

 7            THE COURT:  In today's paper?

 8            MR. LANE:  Yeah, today.

 9            THE COURT:  What was it that you read that you recall?

11:45 10            MR. LANE:  Just an article about the case, your name

11    and the defendant's name.

12            THE COURT:  Would the information that you read in

13    that paper in any way affect your ability to be fair and

14    impartial in this case?

15            MR. LANE:  No.

16            THE COURT:  Any questions in that regard, Mr.

17    Goldstein?

18            MR. GOLDSTEIN:  No.

19            MS. KAPLAN:  No.

11:45 20            THE COURT:  You also mentioned, Mr. Lane, that you or

21    someone in your family had been the victim of a crime.  Would

22    you tell me about that?

23            MR. LANE:  Our house was burglarized.  It was a while

24    ago.

25            THE COURT:  How long ago if you remember?

1            MR. LANE:  Maybe 25 years ago, maybe.

2            THE COURT:  Was anybody apprehended or charged with a

3     crime?

4            MR. LANE:  Yeah.  He stole some money and stuff.

5            THE COURT:  Did you go to court and testify?

6            MR. LANE:  I think my mother did.  No, nobody

7     testified.  They arrested him.  They caught him.

8            THE COURT:  Would that involvement with the criminal

9     justice system affect your ability to be fair and impartial in

11:46 10     this case?

11           MR. LANE:  No.

12           THE COURT:  Mr. Goldstein?

13           MR. GOLDSTEIN:  Nothing, your Honor.

14           MS. KAPLAN:  No, your Honor.

15           THE COURT:  You also mentioned, Mr. Lane, that you or

16    a member of your family had been involved in a civil or

17    criminal case as a witness, a party or a juror.  Would you tell

18    me about that?

19           MR. LANE:  I was a juror.

11:46 20           THE COURT:  How long ago was that?

21           MR. LANE:  Five or six years ago, I think.

22           THE COURT:  Do you remember what kind of case it was?

23           MR. LANE:  I don't.  To be honest, I can't remember if

24    it was -- it was here.

25           THE COURT:  It was in this court?

1          MR. LANE:  I think it was civil.  It was a man -- it

2     was a bar fight, and I can't remember -- a fight in a bar.  I

3     can't remember if it was discrimination or not.

4          THE COURT:  Do you remember how it came out?  Do you

5     remember how --

6          MR. LANE:  I hate to say it.  The people who -- I

7     think the defendants -- were guilty.  I can't remember.

8          THE COURT:  Guilty or liable?  One or the other?

9          MR. LANE:  The defendants were.  What I can't remember

11:47 10   is if they were the plaintiffs or the defendants.

11          THE COURT:  Fair enough.

12          MR. LANE:  I think they were the defendants.

13          THE COURT:  Would that involvement, whether it was a

14     criminal or civil case, in any way affect your ability to be

15     fair and impartial in this case?

16          MR. LANE:  No.

17          THE COURT:  Mr. Goldstein?

18          MR. GOLDSTEIN:  Nothing, your Honor.

19          MS. KAPLAN:  No, your Honor.

11:47 20        THE COURT:  Also, Mr. Lane, you mentioned that you had

21     been or someone in your family had been employed by the Boston

22     Police Department or the United States Attorney's Office or one

23     of the agencies.

24          MR. LANE:  I had an uncle who was a Boston police

25     officer.

1          THE COURT:  How long ago was that?

2          MR. LANE:  He probably retired about five or six years

3     ago.

4          THE COURT:  Would the fact that you had a relative who

5     was a police officer in any way affect your ability to be fair

6     and impartial in this case which is going to involve the

7     testimony of law enforcement officers?

8          MR. LANE:  No.

9          THE COURT:  Any questions, Mr. Goldstein?

11:47 10          MR. GOLDSTEIN:  No, your Honor.

11          MS. KAPLAN:  No.

12          THE COURT:  Finally, it might be redundant, but you

13     did mention that you or a member of your family knew a police

14     officer.  Was that the same one?

15          MR. LANE:  Yeah.  I also have another uncle who was

16     Mass. State Police.

17          THE COURT:  Would the fact that you know a police

18     officer affect your ability to be fair in this case?

19          MR. LANE:  No.

11:48 20          THE COURT:  Any questions, Mr. Goldstein or Miss

21     Kaplan?

22          MR. GOLDSTEIN:  No.

23          MS. KAPLAN:  No.

24          MR. LANE:  Can I mention the hardship?  I know it

25     probably doesn't count, but there was an event next week that I

1    wanted to attend for my son, his eighth grade graduation.  It's

2    during the day, but I know it's probably not --

3          THE COURT:  Well, you know, I hate to have -- I hate

4    to interrupt family events, but this is a very important duty

5    that you have to serve as a juror.  It's a civic duty that's

6    important.  If that is something that is so life-involved that

7    you feel you absolutely can't miss it, then I might think about

8    it a different way.  But if it's something that would be nice

9    to be at but is not, you know, controlling your life, then I'd

11:48 10   ask you to put up with this and sit on this jury.  Can you do

11   that for me?

12         MR. LANE:  Understood.  Yes.

13         THE COURT:  Thank you, Mr. Lane.  Have a seat in the

14   jury.

15         Mr. Hunter, please.  Good morning, Mr. Hunter.  You

16   said that you don't think you would be unbiased in this case.

17   Why is that?

18         MR. HUNTER:  Respectfully to you is, when you say you

19   only have to admit what you say -- when you say that you only

11:49 20   have admittable (ph) -- what you say is admittable (ph),

21   whether it be law or anything, knowing a little bit of law,

22   that makes it -- if I already know some stuff about the law --

23         THE COURT:  When did I say I wasn't going to admit

24   evidence?

25         MR. HUNTER:  You said anything that's not brought in

1    this case by others, if anything is not brought in --

2           THE COURT:  I don't understand, Mr. Hunter.  Are you

3    telling me you just can't be fair and impartial in this case or

4    any other case?

5           MR. HUNTER:  Yes.  You want me to explain why?

6           THE COURT:  Sure.

7           MR. HUNTER:  This is meant respectfully.  The case

8    against -- the U.S. Government against Brown, when they did not

9    admit the law into the courtroom --

11:50 10          THE COURT:  What case are you talking about?

11          MR. HUNTER:  The IRS.

12          THE COURT:  Are you talking about the New Hampshire

13   case?

14          MR. HUNTER:  Yes, sir.

15          THE COURT:  Okay.

16          MR. HUNTER:  I'm being respectful.

17          THE COURT:  It doesn't seem you're being very

18   respectful of the law.

19          MR. HUNTER:  Another case was held in Louisiana on the

11:50 20   same issue.

21          THE COURT:  So because of the Brown case, you can't be

22   fair in this case; is that what you're telling me?

23          MR. HUNTER:  Because --

24          THE COURT:  Is that what you're telling me?

25          MR. HUNTER:  I'm asking you, if I knew something about

1    the law --

2         THE COURT:  Are you trained in the law?  Have you ever

3    gone to law school?

4         MR. HUNTER:  No, but I, like, read the Constitution,

5    and I know there's a lot of things.  I had an issue at law, and

6    I was told I would have to get it judified (ph) whether it be

7    true or not.  And so then things can't get admitted --

8         THE COURT:  Okay.  Mr. Hunter, you're excused.

9         MR. HUNTER:  Thank you, sir.

11:51 10        THE COURT:  Miss Hatch, please.  Good morning, Miss

11   Hatch.  You said that you don't think you could decide this

12   case solely on the basis of the evidence that comes into this

13   courtroom.  What did you mean by that?

14        MS. HATCH:  I deal in court a lot.

15        THE COURT:  I'm sorry?

16        MS. HATCH:  I deal in court a lot.  I'm in charge of

17   over 500 properties, rental properties, year-round rental

18   properties.  I deal with lawyers a lot, and I've been hauled

19   into court.  I've been threatened to be sued.  I've been hauled

11:52 20   up to the discrimination board.  I really truly do not think I

21   could --

22        THE COURT:  I'm sorry.  What?

23        MS. HATCH:  I truly do not think I could judge this

24   fairly because of my experiences.  I'm in the middle of an

25   eviction right now with a lawyer, so --

1          THE COURT:  What does that have to do with charges in

2     a criminal case in a federal court that has nothing to do with

3     property or evictions or anything else?

4          MS. HATCH:  My opinion of the lawyers, of lawyers

5     period -- and I apologize for this -- is not good at all.

6          THE COURT:  So because you don't like lawyers, you

7     couldn't be fair and impartial in this case?  There are lawyers

8     on both sides.  Who are you going to hold it against?

9          MS. HATCH:  I understand that.  I do.  I understand

11:53 10     that.  But because of what I've been through, I really don't --

11          THE COURT:  Don't what?

12          MS. HATCH:  -- feel I could judge this.

13          THE COURT:  That is because you don't like lawyers?

14          MS. HATCH:  That and the fact of the court cases that

15     I've been involved in and see what happens, that, too.

16          THE COURT:  What happens in court is unfair to you,

17     and so you can't sit as a juror?

18          MS. HATCH:  A lot of times.

19          THE COURT:  You know, if I could assign you to a case

11:53 20     that would last six months, I'd do that because that's what you

21     deserve.  But you're excused from this case.  You're excused.

22          MS. HATCH:  I'm sorry.  I'm sorry.

23          THE COURT:  All right.  We have two seats to fill, 11

24     and 12.

25     .   .   .  END OF SIDEBAR CONFERENCE.)

1      THE CLERK:  Filling Seat No. 11, Juror No. 53, Robert

2  Gallagher.  Filling Seat No. 12, Juror No. 59, Elizabeth

3  Slossberg.

4      THE COURT:  Mr. Gallagher, please, would you come to

5  sidebar.

6  (SIDEBAR CONFERENCE AS FOLLOWS:

7      THE COURT:  Good morning, Mr. Gallagher.  You

8  mentioned that you or a member of your family had heard or --

9  actually, you had heard something about this case before you

11:55 10  came here this morning.

11      MR. GALLAGHER:  It's on the front page of the *Globe*.

12  I read it this morning.

13      THE COURT:  Had you not heard about it before that?

14      MR. GALLAGHER:  I had heard something but it's just in

15  passing.

16      THE COURT:  Whatever is in the *Globe*, would that

17  affect your ability to be fair and impartial in this case?

18      MR. GALLAGHER:  I don't think so.  I was just reading

19  it earlier.

11:55 20      THE COURT:  Can you decide this case solely on the

21  basis of the evidence that comes into this courtroom and not on

22  what was in the article?

23      MR. GALLAGHER:  I'm sure.

24      THE COURT:  Any questions, Mr. Goldstein?

25      MR. GOLDSTEIN:  No.

 1          MS. KAPLAN:  No.

 2          THE COURT:  You also mentioned, Mr. Gallagher, that

 3    you or a member of your family had been the victim of a crime.

 4    Would you tell me about that?

 5          MR. GALLAGHER:  House break years ago.

 6          THE COURT:  What happened?

 7          MR. GALLAGHER:  We were out for the evening, and when

 8    we came home, someone had broken into the house and stolen a

 9    number of articles.

11:56 10          THE COURT:  Did they ever apprehend anybody?

11          MR. GALLAGHER:  Absolutely not.

12          THE COURT:  You didn't go to court or have --

13          MR. GALLAGHER:  No.

14          THE COURT:  Would that indirect involvement with the

15    criminal justice system affect your ability to be fair and

16    impartial in this case?

17          MR. GALLAGHER:  No.

18          THE COURT:  Any questions, Mr. Goldstein?

19          MR. GOLDSTEIN:  No.

11:56 20          MS. KAPLAN:  Nothing, your Honor.

21          THE COURT:  One other question I believe you answered

22    yes to, Mr. Gallagher, was that you or a member of your family

23    had been involved in a civil or a criminal case as a witness, a

24    party or a juror.

25          MR. GALLAGHER:  Just a juror.

1          THE COURT:  When was that?

2          MR. GALLAGHER:  Back probably in the '70s and '80s.

3     It was a civil case in Suffolk, and it was a rape case in

4     Suffolk, also.

5          THE COURT:  How did the case come out, the rape case?

6          MR. GALLAGHER:  Rape case was -- I think it was the

7     second day it was we were told to leave, and they settled it.

8          THE COURT:  I see.  And the first case, if you

9     remember?

11:56 10          MR. GALLAGHER:  Civil.  Civil was found for the

11    plaintiff.

12          THE COURT:  Okay.  Would that involvement with either

13    the civil or the criminal case affect your ability to be fair

14    and impartial in this case?

15          MR. GALLAGHER:  To tell you the truth, I can't

16    remember much about it, to tell you the honest to God's truth.

17          MR. GOLDSTEIN:  Nothing, your Honor.

18          MS. KAPLAN:  No.

19          THE COURT:  I believe those are the only questions you

11:57 20    answered affirmatively.  Have a seat in the jury, sir.  Thank

21    you.

22          Miss Slossberg, please.  Good morning, Miss Slossberg.

23    You mentioned that you might have a scheduling problem.  Would

24    you tell me about that?

25          MS. SLOSSBERG:  I have a one- and a three-year-old

1    that attend a family daycare near where I work, which is in

2    Wayland.  I'm a middle schoolteacher.  I drive them out, drop

3    them off, go to school, pick them up.  They have to be dropped

4    off -- they can be dropped off as early as 7, but I have to

5    pick them up by 4:00.  My husband is a contractor, and his work

6    is not in that area.

7         THE COURT:  Okay.  So it's a tough time for you in

8    terms of your child care.

9         MS. SLOSSBERG:  Child care works when I'm at work.

11:58 10       THE COURT:  What are you doing today, for instance?

11        MS. SLOSSBERG:  Well, he was able to do today.  I

12   don't have family in the area, so --

13        THE COURT:  So this would be a hardship, you think, to

14   have -- it's actually going to be a relatively short trial.

15   It's going to be this week and next week.

16        MS. SLOSSBERG:  One of the major conflicts is he has a

17   client that's moving and closing, so he's supposed to be

18   working late this week, up until 8:00 at night, to get the

19   people out of the house.

11:58 20       THE COURT:  Sounds like this is not the right time, so

21   I'm going to excuse you from this jury.  Would you please tell

22   them down in the jury lounge when a less inconvenient time

23   might be?  Maybe that's in a couple of years when your kids get

24   off to school but if there's a time when it's not as

25   inconvenient as it is for you now.  We want you to serve as a

1    juror.  It's a very important civic duty, and we hope you

2    understand that and are willing to do that.  But I'm excusing

3    you because I think this is not the right time.

4           MS. SLOSSBERG:  Thank you.  I appreciate that.

5           THE COURT:  We have just one seat now to fill.

6    .   .   .  END OF SIDEBAR CONFERENCE.)

7           THE CLERK:  Filling Seat No. 12, Juror No. 14,

8    Patricia Cunningham.

9    (SIDEBAR CONFERENCE AS FOLLOWS:

11:59 10        THE COURT:  I have no affirmative responses, and so

11   we're now going to go to the second round of asking each what

12   they do for a living.  Then we'll go to the second round of

13   peremptories.

14   .   .   .  END OF SIDEBAR CONFERENCE.)

15          THE COURT:  All right, jurors.  I'm going to ask those

16   of you who have just joined the jury the same questions I asked

17   the first group.  And I think I need to start with Miss Gorman.

18   Would you tell us what you do for living, ma'am?

19          MS. GORMAN:  Lease administration manager for a real

12:00 20   estate development company.

21          THE COURT:  I didn't hear the first part.

22          MS. GORMAN:  I'm a lease administration manager for a

23   real estate developer.

24          THE COURT:  Whereabouts are they located?

25          MS. GORMAN:  Boston.

1              THE COURT:  Okay.  Are you married, ma'am?

2              MS. GORMAN:  I am.

3              THE COURT:  And your spouse?

4              MS. GORMAN:  He's a doctoral candidate in forensic

5     psychology.

6              THE COURT:  Where is he a candidate?

7              MS. GORMAN:  Massachusetts School of Professional

8     Psychology.

9              THE COURT:  Thank you.  Mr. Collins, what do you do

12:00 10    for a living, sir?

11             MR. COLLINS:  I'm a lineman in the power department

12    for the MBTA.

13             THE COURT:  Are you married, sir?

14             MR. COLLINS:  Yes.

15             THE COURT:  And your spouse?

16             MR. COLLINS:  She's a nurse.

17             THE COURT:  Whereabouts?

18             MR. COLLINS:  Topsfield.

19             THE COURT:  In Topsfield, Massachusetts.  Thank you,

12:00 20    Mr. Collins.

21             Mr. Lane, would you tell us what you do for a living,

22    sir?

23             MR. LANE:  Project manager for Metropolitan Life.

24             THE COURT:  And where --

25             MR. LANE:  In Boston.

1          THE COURT:  In Boston.

2          MR. LANE:  My wife is a teacher's aid for a parochial

3     school in Attleboro.

4          THE COURT:  Thank you, Mr. Lane.  Next would be Mr.

5     Gallagher, I believe.

6          MR. GALLAGHER:  I'm retired from NStar Electric for 44

7     years.

8          THE COURT:  What did you do for them, sir?

9          MR. GALLAGHER:  For the first 20, I was a substation

12:01 10     operator, and the last 22 I was in the safety department.  My

11     wife was a stay-at-home mom for the last 44 years, but prior to

12     that, she worked in the Treasurer's Office for the City of

13     Boston.

14          THE COURT:  Thank you, Mr. Gallagher.

15          Miss Cunningham, would you tell us what you do for a

16     living, ma'am?

17          MS. CUNNINGHAM:  I'm an educational consultant

18     advocate for a nonprofit organization in Taunton.

19          THE COURT:  What's the name of the nonprofit?

12:01 20          MS. CUNNINGHAM:  Community Care Services.

21          THE COURT:  Are you married, ma'am?

22          MS. CUNNINGHAM:  Yes, I am.

23          THE COURT:  And your spouse?

24          MS. CUNNINGHAM:  My husband is a FORTRAN developer for

25     the Department of Transitional Assistance.

1      THE COURT:  Where are they --

2      MS. CUNNINGHAM:  For the Commonwealth of

3  Massachusetts.

4      THE COURT:  Does he work in Boston?

5      MS. CUNNINGHAM:  Yes.

6      THE COURT:  Thank you, Miss Cunningham.

7      And I believe it would be Mr. Maiellano.  Is that how

8  you pronounce it?

9      MR. MAIELLANO:  Maiellano.

12:02 10      THE COURT:  Maiellano.

11      MR. MAIELLANO:  I just graduated from Western New

12  England University, and I'm currently unemployed.

13      THE COURT:  What was your major?

14      MR. MAIELLANO:  Marketing.

15      THE COURT:  What are you trying to go into at this

16  stage?

17      MR. MAIELLANO:  Anything right now.

18      THE COURT:  Are you married?

19      MR. MAIELLANO:  No, I'm not.

12:02 20      THE COURT:  Thank you, Mr. Maiellano.  I'll see

21  counsel at sidebar.

22      I beg your pardon.  I need to ask one more.  I

23  neglected to ask Mr. Franke what he does for a living.  I'm

24  sorry, Mr. Franke.

25      MR. FRANKE:  Senior planner at Brookfield Engineering

1    Lab.

2              THE COURT:  What does that mean?

3              MR. FRANKE:  We make -- I'm in charge of the

4    production area.

5              THE COURT:  Are you married, Mr. Franke?

6              MR. FRANKE:  I am, and my wife also works at

7    Brookfield, and she's a customer service representative for

8    international sales.

9              THE COURT:  Thank you, Mr. Franke.

12:03 10    (SIDEBAR CONFERENCE AS FOLLOWS:

11              THE COURT:  In the second round, the defendant goes

12    first.  Any challenges, Mr. Goldstein?

13              MR. GOLDSTEIN:  Juror No. 46, Mr. Franke.

14              THE COURT:  In Seat No. 8?

15              MR. GOLDSTEIN:  Seat No. 8.

16              THE COURT:  Any others now?

17              MR. GOLDSTEIN:  Not right now, no.

18              THE COURT:  Okay.  For the government, Miss Kaplan?

19              MS. KAPLAN:  Juror No. 25, Steven Collins.

12:03 20              THE COURT:  What seat?

21              MS. KAPLAN:  5.

22              THE COURT:  Mr. Collins.  So it's No. 25 in Seat 5.

23    We'll go back to the defendants.  Any further challenges?

24              MR. GOLDSTEIN:  We're good.

25              THE COURT:  To the government.  Is it --

1          MS. KAPLAN:  No, your Honor.

2          THE COURT:  So we have vacancies in Seats 5 and 8.

3     Let me say now, counsel -- come in.  These will be the two

4     alternates.  Whoever is seated in 5 and 8 will now be Alternate

5     No. 1 and Alternate No. 2, depending on whether they're struck.

6     These are the two seats where the alternates will be sitting.

7     .  .  .   END OF SIDEBAR CONFERENCE.)

8          THE CLERK:  The following two jurors are excused and

9     may report down to the second floor in the jury hall:  Steven

12:04 10     Collins and Robert Franke.

11          Filling Seat No. 5, Juror No. 10, Oleg Volfson, the

12     vacant seat in the first row, sir.  And filling Seat No. 8,

13     which is the first seat in the second row, Juror No. 19, Tracy

14     Owen.

15          THE COURT:  If Miss Owen would just please come to

16     sidebar.

17     (SIDEBAR CONFERENCE AS FOLLOWS:

18          THE COURT:  Good morning, Miss Owen.  You mentioned

19     that you might have a scheduling problem.  Would you tell me

12:05 20     about that?

21          MS. OWEN:  Yes.  I'm a business owner, horse and dogs.

22     I do doggy daycare, horseback riding.  I run the business.  I

23     own it.  And I also take care of my children at home.

24          THE COURT:  You don't have anybody else working for

25     you?

1          MS. OWEN:  It's been rather challenging to try and

2     accommodate, but I do have employees.

3          THE COURT:  What are you doing today?

4          MS. OWEN:  I'll have to shuffle my kids around.  My

5     husband stayed home today.

6          THE COURT:  Where is the kennel?

7          MS. OWEN:  Lakeville.

8          THE COURT:  This is going to be a relatively short

9     trial, this week and next week.

12:06 10          MS. OWEN:  That's fine.

11          THE COURT:  I know that trial duty causes

12     inconvenience.  We ask citizens to suffer inconvenience, not

13     hardship.  And the difference, of course, is hard to draw the

14     line.  But if you can do your civic duty, we would very much

15     appreciate that.

16          MS. OWEN:  I thought I'd at least mention it.

17          THE COURT:  You also mentioned, Miss Owen, that you or

18     a member of your family had been the victim of a crime.  Would

19     you tell me about that?

12:06 20          MS. OWEN:  Yes.  When I lived in Miami, my home was

21     broken into while I was there.

22          THE COURT:  How long ago was that?

23          MS. OWEN:  Like, ten years.

24          THE COURT:  Was anybody apprehended?

25          MS. OWEN:  No.

1        THE COURT:  Did you go to court or follow it up

2    somehow?

3        MS. OWEN:  No.

4        THE COURT:  Would that involvement, as indirect as it

5    was, with the criminal justice system in any way affect your

6    ability to be fair and impartial in this case?

7        MS. OWEN:  No.

8        THE COURT:  Mr. Goldstein?

9        MR. GOLDSTEIN:  No.

12:07 10        MS. KAPLAN:  No.

11        THE COURT:  You also mentioned, Miss Owen, that you or

12    a member of your family had been involved in a criminal or

13    civil proceeding as a party, a witness or a juror.

14        MS. OWEN:  My business, with the horseback riding, we

15    were sued from a claim back in 2008.  It just settled the

16    beginning of this year.

17        THE COURT:  Did you have a deposition taken in that?

18        MS. OWEN:  We did depositions.  They went all the way

19    to the week before trial, and they settled out of court.

12:07 20        THE COURT:  Okay.  Would that involvement with the

21    civil justice system in any way affect your ability to be fair

22    in this case?

23        MS. OWEN:  No, it wouldn't.  I was irritated with my

24    case but --

25        THE COURT:  Mr. Goldstein?

1          MR. GOLDSTEIN:  No.

2          THE COURT:  And Miss Kaplan?

3          MS. KAPLAN:  No.

4          THE COURT:  Finally, Miss Owen, I believe you

5     mentioned that you perhaps knew one of the names of the

6     witnesses on the list.

7          MS. OWEN:  Yes.  My mother is title examiner in

8     Plymouth County primarily, and I believe I recognize one of the

9     names.

12:08 10          THE COURT:  Do you remember which name it was?

11          MS. OWEN:  It was --

12          THE COURT:  I can get the list for you --

13          MS. OWEN:  Please.

14          THE COURT:  -- if that's necessary.

15          MS. OWEN:  Reardon.  I'm, like, it's right here.

16          THE COURT:  Mr. Reardon?

17          MS. OWEN:  Yes.

18          THE COURT:  How do you know him?

19          MS. OWEN:  My mother has mentioned his name.  Other

12:08 20     than that --

21          THE COURT:  You don't know him personally?

22          MS. OWEN:  Probably not.

23          THE COURT:  If he were a witness in this case, would

24     that make it difficult for you to be fair and impartial?

25          MS. OWEN:  No.

1          THE COURT:  Any questions?

2          MR. GOLDSTEIN:  No.

3          MS. KAPLAN:  No.

4          THE COURT:  I believe, then, those were the only

5    questions you answered affirmatively.  Have a seat in the jury,

6    ma'am.  Thank you.

7          MR. REDDINGTON:  You know what that relates to, Judge?

8    Jack Reardon used to be the Registrar of Deeds in Plymouth.

9    I'm sure, with the woman doing the title searches --

12:08 10          THE COURT:  So I'm not going to do anything further

11   about that.

12          The other new one had no responses, Mr. Volfson.

13   Okay.  I now will ask each of them what they do -- you can stay

14   or we'll have a -- we'll have a round of peremptories.

15   .  .  .  END OF SIDEBAR CONFERENCE.)

16          THE COURT:  I'm going to ask those of you who have

17   just joined the jury the same questions I did before.  Mr.

18   Volfson, is that how you pronounce it?

19          MR. VOLFSON:  Yes.

12:09 20          THE COURT:  Would you tell me what you do for a

21   living, sir?

22          MR. VOLFSON:  I'm an electrical engineer by training,

23   working for Ericsson, and I'm doing customer support of

24   international customers.

25          THE COURT:  Again, the name of your employer?

1          MR. VOLFSON:  Ericsson.

2          THE COURT:  Ericsson.  Where are they located?

3          MR. VOLFSON:  They're located in Plano, Texas, and I

4     work from home here.

5          THE COURT:  You work from home.  They don't have an

6     office here in Massachusetts?

7          MR. VOLFSON:  I do.

8          THE COURT:  Are you married, Mr. Volfson.

9          MR. VOLFSON:  Yes.  My wife is a medical biologist in

12:10 10    a research lab at MIT.

11          THE COURT:  At MIT.  A research biologist?

12          MR. VOLFSON:  Yes.

13          THE COURT:  Thank you, Mr. Volfson.

14          Miss Owen, would you tell us what you do for a living,

15    ma'am?

16          MS. OWEN:  I have my own business, doggy daycare and

17    horseback riding, in Lakeville, mass.

18          THE COURT:  Are you married, ma'am?

19          MS. OWEN:  Yes, I am, and my husband works in

12:10 20    Burlington, Mass., for client services, social media.

21          THE COURT:  Thank you, Miss Owen.  I'll see counsel.

22    (SIDEBAR CONFERENCE AS FOLLOWS:

23          THE COURT:  Government goes first in the third round.

24    Miss Kaplan?

25          MS. KAPLAN:  We would challenge No. 10 in Seat 5, Mr.

1   Volfson.

2        THE COURT:  So that would be No. 10 in Seat 5, is that

3   right?

4        MS. KAPLAN:  Yes.

5        THE COURT:  Okay.  And we'll go to the defendants.

6        MR. GOLDSTEIN:  We're content, your Honor.

7        THE COURT:  Okay.  Back to the government.

8        MS. KAPLAN:  We're content, your Honor.

9        THE COURT:  All right.  So Mr. Volfson in Seat 10 has

12:11 10  been challenged.  That means, counsel, that Miss Owen is the

11  first alternate.  The one in the seat now will be the second

12  alternate, okay?  Understood?  We'll try it one more time.  You

13  can stay right here if you'd like.

14  .  .  .  END OF SIDEBAR CONFERENCE.)

15        THE CLERK:  Mr. Volfson, you have been excused.

16  Please take your card to the jury lounge on the second floor.

17        Filling Seat No. 5 is Juror No. 11, Pamela MacBeth.

18        THE COURT:  Miss MacBeth, if you would just come to

19  sidebar, please.

12:12 20  (SIDEBAR CONFERENCE AS FOLLOWS:

21        THE COURT:  Good afternoon, Miss MacBeth.  You

22  mentioned that someone in your family had been investigated or

23  charged with a crime.  Would you tell me about that?

24        MS. MACBETH:  Yes.  That was my brother, back a long

25  time ago, charged for attempted murder.  It was his friend.

1          THE COURT:  How long ago was this?

2          MS. MACBETH:  This had to be in the '90s.

3          THE COURT:  Was there a trial?

4          MS. MACBETH:  There was.

5          THE COURT:  Did you attend?

6          MS. MACBETH:  I didn't, no.

7          THE COURT:  Did you talk with your brother or anyone

8     else about the trial and what was going on at the time?

9          MS. MACBETH:  Yeah.

12:12 10          THE COURT:  Would that involvement with the criminal

11    justice system in any way affect your ability to be fair and

12    impartial in this case which involves allegations of different

13    kinds of criminal conduct?

14          MS. MACBETH:  I'd like to say yes, but I have a big

15    mouth.

16          THE COURT:  I'm not sure I understand what that means.

17    Let me ask it a different way.  Could you decide this case

18    solely on the basis of what comes into this courtroom and not

19    on the basis of any prior conceptions or feelings about law

12:13 20    enforcement?

21          MS. MACBETH:  I couldn't be partial, if that's what

22    you're asking, no.

23          THE COURT:  You could not be impartial?

24          MS. MACBETH:  I'm sorry, impartial, no.

25          THE COURT:  Why is that?

1          MS. MACBETH:  Because what happened with my brother, I

2     just have something against the lawyers.

3          THE COURT:  Something against the lawyers?  There are

4     lawyers on both sides.  Who would you hold it against?

5          MS. MACBETH:  Well, I guess it was the ones that were

6     going after my brother.

7          THE COURT:  I'm sorry?

8          MS. MACBETH:  The ones that were going after my

9     brother, I would have to say.

12:13 10          THE COURT:  You would hold it against prosecutors?

11          MS. MACBETH:  I guess, if that's the case, so --

12          THE COURT:  Are you just trying to get out of jury

13     duty?

14          MS. MACBETH:  No, no.  I just -- no.  I'll just do

15     what I can.

16          THE COURT:  Well, I want you to answer my questions as

17     truthfully as you can.  And if you think that you cannot be

18     fair and impartial, then I won't have you on this jury.  But if

19     you can be fair and impartial, then it's your civic duty to sit

12:14 20     on this jury.

21          MS. MACBETH:  To be honest, I couldn't be fair, to be

22     honest with you.

23          THE COURT:  You're excused.

24          MS. MACBETH:  To be honest with you.

25          THE COURT:  We'll try it again.

1    . . . END OF SIDEBAR CONFERENCE.)

2         THE CLERK:  Filling Seat No. 5, Juror No. 26, Michael

3    O'Connor.

4         THE COURT:  Mr. O'Connor, would you please come to

5    sidebar.

6    (SIDEBAR CONFERENCE AS FOLLOWS:

7         THE COURT:  Good afternoon, Mr. O'Connor.  You

8    mentioned that you might have heard something about this case

9    before you came into court today.  Would you tell me about

12:15 10   that?

11        MR. O'CONNOR:  I read the *Globe* article this morning.

12   What I did was I read the first page, realized that it was in

13   federal court and that I was coming here, and I didn't read the

14   rest of the article.

15        THE COURT:  Good for you.  Was there anything in that

16   first page that would make it difficult for you to be fair and

17   impartial in this case?

18        MR. O'CONNOR:  No.

19        THE COURT:  Any questions in that regard, Mr.

12:15 20   Goldstein?

21        MR. GOLDSTEIN:  No questions.

22        THE COURT:  Or Miss Kaplan?

23        MS. KAPLAN:  No, your Honor.

24        THE COURT:  You also mentioned, Mr. O'Connor, that you

25   or a member of your family had been a party to a civil or a

1  criminal case as a party, a witness or a juror.  Would you tell

2  me about that?

3       MR. O'CONNOR:  In my last job, I represented the

4  company on a number of civil matters related to contract

5  issues.

6       THE COURT:  That meant that you got into court

7  frequently?

8       MR. O'CONNOR:  A lot.

9       THE COURT:  Would that --

12:16 10      MR. O'CONNOR:  I got to know the Cambridge court

11  system very well.

12       THE COURT:  Would that involvement with the Cambridge

13  court system in any way affect your ability to be fair and

14  impartial in this case which involves allegations of criminal

15  conduct?

16       MR. O'CONNOR:  No.

17       THE COURT:  Mr. Goldstein?

18       MR. GOLDSTEIN:  Nothing.

19       MS. KAPLAN:  No, your Honor.

12:16 20      THE COURT:  Finally, Mr. O'Connor, you mentioned that

21  you or a member of your family knows a police officer.

22       MR. O'CONNOR:  First of all, I was executive secretary

23  for the Massachusetts Parole Board for four years, so I know a

24  lot of police officers, district attorneys, judges, a lot of

25  them.  My niece's husband is a former Boston police officer,

1    and that's how I made the connection.

2         THE COURT:  Would the fact that you know a lot of

3    police officers and people in law enforcement in any way affect

4    your ability to be fair and impartial in this case which is

5    going to involve the testimony of law enforcement officers?

6         MR. O'CONNOR:  I don't think so.

7         THE COURT:  Okay.  Any questions, Mr. Goldstein?

8         MR. GOLDSTEIN:  No, your Honor.

9         THE COURT:  Miss Kaplan?

12:17 10      MS. KAPLAN:  No.

11        THE COURT:  Please have a seat in the jury, sir.

12   Thank you.  I guess I just have to ask him that question.  Then

13   you can stay right here.

14   .  .  .  END OF SIDEBAR CONFERENCE.)

15        THE COURT:  As you're being seated, Mr. O'Connor,

16   would you please tell us what you do for a living and, if

17   you're married, what your spouse does?

18        MR. O'CONNOR:  My wife is transitioning out of working

19   for the Alzheimer Association in Massachusetts.  She does

12:17 20   medical education.  I work for Partners Healthcare, director of

21   development for information systems.

22        THE COURT:  Thank you very much, Mr. O'Connor.  I'll

23   see counsel.

24   (SIDEBAR CONFERENCE AS FOLLOWS:

25        THE COURT:  Fourth round, defendant goes first.

 1          MR. GOLDSTEIN:  We will strike Mr. O'Connor, your

 2    Honor.

 3          THE COURT:  Okay.

 4          MR. GOLDSTEIN:  Unfortunately.

 5          THE COURT:  So that's No. 26 in Seat 5.  Okay.  We'll

 6    try again.

 7    .  .  .  END OF SIDEBAR CONFERENCE.)

 8          THE CLERK:  Mr. O'Connor, you have been excused.

 9    Please take your card to the second floor where you checked in.

12:18 10          And filling Seat No. 5, Juror No. 43, Geoffrey Hunt.

11          THE COURT:  Mr. Hunt, if you'll just come to sidebar.

12    (SIDEBAR CONFERENCE AS FOLLOWS:

13          THE COURT:  Good afternoon, Mr. Hunt.

14          MR. HUNT:  It is afternoon.  Good afternoon.

15          THE COURT:  You mentioned that you or a member of your

16    family knows a police officer.  Would you tell me about that?

17          MR. HUNT:  I think it was a broader question.  My wife

18    used to work for the D.A. in Hampden County more than 25 years

19    ago.

12:19 20          THE COURT:  She worked for a law enforcement officer,

21    and that was the reason for the response?

22          MR. HUNT:  Right.

23          THE COURT:  Would that relationship with someone who

24    worked for the D.A. in any way affect your ability to be fair

25    and impartial in this case which is going to involve the

1    testimony of law enforcement officers?

2              MR. HUNT:  No.

3              THE COURT:  Any questions, Mr. Goldstein?

4              MR. GOLDSTEIN:  No questions.

5              THE COURT:  Or Miss Kaplan?

6              MS. KAPLAN:  No.

7              THE COURT:  You also mentioned, I believe, Mr. Hunt,

8    that you or a member of your family had been involved in a

9    civil or a criminal case as a party, a witness or a juror.

12:19 10              MR. HUNT:  Yes.  A couple things.  Just from business,

11   I did work for a large company, the MNA group.  There would be

12   some controversy, and I'd have to testify.

13              THE COURT:  You've been in court before testifying in

14   cases?

15              MR. HUNT:  I have.

16              THE COURT:  Would any of that involvement with the

17   civil justice system in any way affect your ability to be fair

18   and impartial in this case which involves allegations of

19   criminal conduct?

12:20 20              MR. HUNT:  No, it would not.

21              THE COURT:  Mr. Goldstein?

22              MR. GOLDSTEIN:  No questions.

23              MS. KAPLAN:  No.

24              THE COURT:  I believe those are the only two questions

25   you answered affirmatively, Mr. Hunt.  Please have a seat in

1    the jury.  Thank you, sir.

2    .  .  .  END OF SIDEBAR CONFERENCE.)

3         THE COURT:  As you're being seated, Mr. Hunt, would

4    you tell us what you do for a living, sir?

5         MR. HUNT:  Currently, I'm a consultant for an

6    insurance company that I was involved with before.

7         THE COURT:  You say "currently."  Does that mean you

8    had a job before that?

9         MR. HUNT:  Yes.  I helped found an insurance company.

12:20 10   I was a shareholder and executive on the board of that.

11        THE COURT:  Are you married, sir?

12        MR. HUNT:  I am.

13        THE COURT:  And your spouse?

14        MR. HUNT:  She's been at home for a number of years.

15   Before that, she worked in a finance capacity for an insurance

16   company.

17        THE COURT:  Thank you, Mr. Hunt.  I'll see counsel.

18   (SIDEBAR CONFERENCE AS FOLLOWS:

19        THE COURT:  It's the government's turn to go first.

12:21 20        MS. KAPLAN:  I apologize, your Honor, but we would

21   strike No. 43.

22        THE COURT:  So Mr. Hunt is stricken.  That's No. 43 in

23   Seat 5.  This seems to be a tough seat to fill.

24        MR. REDDINGTON:  It's the hot seat, the last one.

25        THE COURT:  We will go for another one.

1       .  .  .  END OF SIDEBAR CONFERENCE.)

2       THE CLERK:  Mr. Hunt, you are excused.  Take your card

3   to the jury lounge on the second floor.  Thank you.

4       Filling Seat No. 5, Juror No. 54, Aaron Bouvier.

5       THE COURT:  As you are seated, Mr. Bouvier -- is that

6   how you pronounce it?

7       MR. BOUVIER:  Yes.

8       THE COURT:  What do you do for a living, Mr. Bouvier?

9       MR. BOUVIER:  Graphic designer in Dorchester, Hairpin

12:22 10  Communications.

11       THE COURT:  Are you married, sir?

12       MR. BOUVIER:  No.

13       THE COURT:  Thank you, Mr. Bouvier.

14   (SIDEBAR CONFERENCE AS FOLLOWS:

15       THE COURT:  Defendant's turn.

16       MR. GOLDSTEIN:  We're content, your Honor.

17       MS. KAPLAN:  As are we, your Honor.

18       THE COURT:  Okay.  What that means is that we have a

19   jury.  I'm going to, per your request, now excuse the jury for

12:23 20  the day.  We're not going to go even into openings.  That was

21   the request, right?

22       MS. KAPLAN:  Yes.

23       THE COURT:  As well as no testimony.  I'm going to say

24   that, for reasons that we need to spend some time in

25   preparation for the trial, we're not going to go forward now.

1    We'll come back tomorrow and have my instructions on the law --

2    to begin with, my preliminary instructions and then openings.

3    And then we will have a full day tomorrow.  We'll go till

4    probably 3:30 and as well on Friday.

5         Is there anything that I need to be aware of before I

6    excuse the jury for the day?

7         MR. GOLDSTEIN:  Can I ask one question of counsel?

8         THE COURT:  Sure.

9    (Discussion held off the record.)

12:24 10         MR. GOLDSTEIN:  Nothing, your Honor.

11         THE COURT:  Anything from the government?

12         MS. KAPLAN:  No.

13         THE COURT:  I am going to caution them, of course, not

14   to do any independent research and all of that.  And I also

15   tell them about running into you and/or witnesses coming in and

16   going out of the courtroom, that you are instructed not to talk

17   to them, and you're not being impolite when you walk by and

18   don't say anything.  Anything else?

19         MS. KAPLAN:  Will you give preliminary instructions

12:24 20   today?

21         THE COURT:  I will give preliminary instructions

22   before we start, yes.  Anything else?  Thank you.

23   .  .  .  END OF SIDEBAR CONFERENCE.)

24         THE COURT:  All right.  I declare that we have a jury

25   indifferent, which means that you are the jury on this case.

1   And in this case -- now, of course, if you have anything left

2   in the back of the courtroom, you're going to be free to

3   collect that.  And I will thank all of those in the jury panel.

4   You may return to the jury lounge.  I'm not sure whether there

5   will be other cases for you to be worried about today, but

6   thank you for your attendance here and for your patience.

7          While everybody is leaving, as they do so, I'm going

8   to have a few more instructions for you before you're excused.

9   But go ahead.

12:25 10  (The venire was excused.)

11         THE COURT:  Jurors, we're just about at lunchtime.

12  Normally, we would be taking a lunch break and asking you to

13  come back for an afternoon session.  But because of the unique

14  situation in this case -- and I'm not sure if you heard about

15  this.  There was a power failure.  There was a fire in this

16  courthouse last Thursday, I believe it was, and a power outage.

17  And all of the computers were down.  And the lawyers, some of

18  whom needed to use the computer system here, were not able to

19  do so.

12:26 20        So we're not quite ready to start the case.  We're

21  going to have the afternoon to do some matters outside of your

22  hearing that are important, that will help shorten the length

23  of the case.  But we're not going to have an afternoon session

24  today.  Tomorrow we will.  Tomorrow we'll have a full day.

25  We'll start about 9 a.m.  We'll have a morning break and then a

1    break for lunch, and we'll go till about 3 or 3:30 but not

2    after 3:30 tomorrow.  That's likely to be the case for the rest

3    of the week.

4         But, now, you don't know anything about this case.

5    You should feel free to get to know one another, but don't talk

6    about this case.  You haven't heard about this case.  You

7    haven't heard any evidence.  It would be inappropriate for you

8    to talk to your fellow jurors or to members of your family

9    about the fact, Oh, I've been seated on a particular case.  And

12:27 10   then someone will say, Oh, I know a case like that.  Let me

11   tell you about this.  You are to stop those people and say,

12   I've been instructed by this ornery judge -- you can use me as

13   the foil -- not to talk about the case because what you are

14   going to do is decide this case based solely on the evidence

15   that comes into this courtroom and not on the basis of anybody

16   else's story about a similar case or one of your own situations

17   where you might want to talk about something that comes to

18   mind.  Get -- you are free to get to know one another and talk

19   about anything else other than this case when you're coming out

12:27 20   -- when you're going out of the courthouse and when you're

21   coming back tomorrow.

22        The deputy is going to show you through that door to

23   the jury room where you will be assembling tomorrow.  I would

24   say one other thing.  When you're going in and out of the

25   courthouse, you may run into some of the lawyers or the people

1    that are involved in this case.  They have been instructed not

2    to talk to you.  It would be entirely inappropriate for you to

3    have any conversation because not only may it be a conflict, it

4    might look like it was a conflict.  So if they go by in the

5    corridor and just nod and don't say anything to you, that is as

6    they are told they have to.  You are not to have any

7    conversation with anybody having anything to do with this case,

8    and as I say, don't talk about the evidence of this case at all

9    because you haven't heard any.

12:28 10         I will see you back here tomorrow at 9 a.m.  We'll get

11   started at that time.  Have a pleasant rest of the day.  The

12   deputy will show you through that door.  She will answer your

13   questions after this.  If you have anything in the back of the

14   courtroom, of course, you can collect that.  You will be going

15   through that way and exiting the building from the jury room.

16   Have a pleasant rest of the day, and I'll see you tomorrow

17   morning at 9 a.m.

18   (The jury was excused at 12:28 p.m.)

19         THE COURT:  Be seated, counsel.  I believe the only

12:29 20  item of business, we did have the issue about the stipulation.

21   But counsel have given to me this morning a stipulation of the

22   parties as to certain facts.  And that being the case, of

23   course, the motion that had to do with that, which I believe

24   was Docket No. 68, will be denied as moot because this

25   stipulation is fine.  And it will be read to the jury at an

1  appropriate time by counsel, I presume, for the government at

2  some stage.  Is that right, Mr. Hafer?

3          MR. HAFER:  Yes, your Honor, that's correct.

4          THE COURT:  Then the only other thing was with respect

5  to the government's proposed expert, Mr. -- Agent Talbot.  The

6  Court will allow him to testify generally about the techniques

7  and methods of money laundering and to summarize reporting

8  requirements, but he will not be allowed to use specific

9  comparative hypotheticals or to testify at length as to the

12:30 10 elements of the charged offense about which I will instruct the

11  jury.

12          I believe those are the only two matters that were

13  left unresolved last Thursday.  Is there anything else that

14  needs to come to my attention, counsel?

15          MR. GOLDSTEIN:  No, your Honor.

16          MS. KAPLAN:  No, your Honor.

17          THE COURT:  Then we will convene tomorrow morning at 9

18  a.m.  As I understand it, counsel have asked for one-half hour

19  for openings.  It will be no more than one-half hour by either

12:31 20 side.  Okay?

21          MR. HAFER:  Thank you, your Honor.

22          MS. KAPLAN:  That's fine.

23          THE COURT:  Anything else?

24          MR. GOLDSTEIN:  No, your Honor.  Thank you.

25          THE COURT:  If not, we're adjourned.  Thank you.

1    (Whereupon, at 12:31 p.m. the trial recessed.)

2

3                          * * * * * *

4

5                    C E R T I F I C A T E

6

7

8          I certify that the foregoing is a correct transcript

9    of the record of proceedings in the above-entitled matter to

10   the best of my skill and ability.

11

12

13

14

15

16   /s/Cheryl Dahlstrom              02/11/2013

17   Cheryl Dahlstrom, RMR, CRR       Dated

18   Official Court Reporter

19

20

21

22

23

24

25